981 A.2d 777

**BAYLY CROSSING, LLC, et al.**

**v.**

**CONSUMER PROTECTION DIVISION, OFFICE OF the ATTORNEY GENERAL.**

**No. 1328, Sept. Term 2008.**

Court of Special Appeals of Maryland.

Oct. 5, 2009.

302

Mark F. Gabler (Rich and Henderson, PC on the brief), Easton, for appellant.

Steven M. Sakamoto–Wengel (Douglas Gansler, Atty. Gen. on the brief), for appellee.

Panel: JAMES R. EYLER, ZARNOCH, THIEME, RAYMOND G., (Retired, specially assigned), JJ.

JAMES R. EYLER, J.

This appeal arises from a civil administrative action by the Consumer Protection Division of the Maryland Office of the Attorney General ("CPD") against appellants Julia B. Passyn, Theodore B. Passyn, Theodore B. Passyn, III ("the Passyns"), and Bayly Crossing, LLC. CPD charged appellants with failing to register under the Home Builder Registration Act ("HBRA"), Maryland Code (2004 Repl Vol., 2007 Supp.),[1] §§ 4.5–101 to 4.5–701 of the Business Regulation Article;

---

1. Chapters 480 and 481 of the Laws of Maryland, 2008, amended the Home Builder Registration Act effective October 1, 2008, making the current citation Maryland Code (2004 Repl. Vol, 2008 Supp.), §§ 4.5–101 to 4.5–801 of the Business Regulation Article. The amendments include a requirement that "home builder sales representatives" register with the Home Builders Registration Unit.2008 Md. Laws, Chap 481, 3997. A "home builder sales representative is defined as an individual employed by a home builder as the home builder's sales representative to consumers regarding the purchase of a new home from the home builder." *Id.* at 3993.

These amendments were not in effect at the time the CPD charged appellants, and the CPD asserts that they are not relevant to this case. Appellants acknowledge the amendments in their reply brief but take no position on their applicability here. We shall therefore limit our analysis to the version of the HBRA in effect at the time appellants were charged.

unfair and deceptive trade practices under the Consumer Protection Act ("CPA"), Maryland Code (2005 Repl.Vol., 2008 Supp.), §§ 13–101 to 13–501 of the Commercial Law Article; and failure to comply with a settlement agreement pursuant to CPA § 13–403(c)(1). The CPD, acting in its quasi-judicial role,[2] delegated the matter to the Office of Administrative Hearings ("OAH"), *see* Maryland Code (2004 Repl.Vol., 2008 Supp.), § 10–205(a), (b) of the State Government Article ("SG"), for proposed findings of fact and conclusions of law, and ultimately issued a Final Order ruling against appellants on all charges. Appellants filed a petition for judicial review pursuant to SG § 10–222(a) in the Circuit Court for Baltimore City, which affirmed the Agency's decision in its entirety. This appeal followed.

## Facts and Proceedings

The Passyns purchased Bayly Crossing, LLC from Talbot Bank on November 19, 2002, with each Passyn acquiring a one-third interest.[3] At the time of the purchase, Bayly Crossing, LLC owned thirty lots in the "Bayly Crossing" subdivision located in Dorchester County, which consisted of nine finished lots and twenty-one unfinished lots. Bayly Crossing, LLC was not registered as a home builder with the Home Builders Registration Unit ("HBRU") prior to the Passyns' acquisition of the company, nor did any of the Passyns apply to register Bayly Crossing, LLC as a home builder following their purchase.

---

**2.** Sections 4.5–502 and 13–403 of the HBRA and CPA, respectively, authorize the CPD to enforce the acts through civil administrative proceedings, in which the CPD may perform the separate and distinct roles of prosecutor and quasi-judicial body.

To avoid confusion, we shall hereinafter refer to the CPD, when acting in its quasi-judicial capacity, as "the Agency."

**3.** The documents in the record indicate that the Passyns collectively acquired a fifty percent interest in Bayly Crossing, LLC. At oral argument, counsel for appellants stated that the Passyns owned the entire interest, and that statement was not contradicted.

Over the 827 day period from October 11, 2002 to January 14, 2005, Bayly Crossing, LLC contracted with ten consumers to sell them homes in the Bayly Crossing subdivision. The form contract used by Bayly Crossing, LLC contained the following pertinent language:

> PURCHASER agrees to buy and SELLER agrees to sell and construct on Lot ____, Phase ____, in the subdivision known as "Bayly Crossing," Dorchester County, in the State of Maryland ("Lot"), with improvements thereon to be known as _____ (Street Address), a house substantially similar to the seller's model known as "_____"
>
> * * *
>
> 12. CONSTRUCTION.
>
> (a) SELLER agrees to complete upon the aforesaid Lot, a dwelling substantially similar, as to workmanship, material, type of construction, floor plans, dimensions, detail and finish to the interior, exterior and structure, to SELLER'S Model House and/or floor plans, drawings, brochures, or any selling aids or displays utilized by SELLER as set forth above, which items have been inspected by PURCHASER . . . .
>
> * * *
>
> 33. ACKNOWLEDGMENT OF RECEIPT OF CONSUMER INFORMATION PAMPHLET:
>
> On _____ (date), my home builder, T.B. Passyn & Sons, Inc., MHBR # 455 Provided me with a copy of the consumer information pamphlet title "Buying a New Home–Consumer Rights and Remedies under Maryland Law" produced by the Consumer Protection Division of the Attorney General's Office.

The contracts were signed by Bayly Crossing, LLC, and Julia B. Passyn, Member, as "SELLER[s]." All payments for the sales were made to Bayly Crossing, LLC. The bottom of the contract indicated that the document was copyrighted to "T.B. Passyn & Sons, Inc., August 1, 1998."

The contracts also contained an addendum titled "Builder's Notice of Standards and Buyer's General Release to Landowner and Buyer's Acknowledgment of Receipt of Consumer Information Pamphlet." [4] The addendum provided:

> T.B. Passyn & Sons, Inc. MHBR 455 is the Builder for the house on Lot ____ Phase ____ located in Bayly Crossing, Cambridge, MD 21613 and hereby agrees to grant to the Buyers of said house a One–Year Limited Warranty in accord with the Standards set by the Residential Warranty Corporation, 5300 Derry Street, Harrisburg, PA. . . .
> \* \* \*
>
> In exchange for said Limited Warranty, the Buyer's [sic] hereby grant a general release to Bayly Crossing, LLC (Theodore B. Passyn, Julia Beall Passyn and Theodore Passyn III[ ] ) Landowners and their heirs, successors and assigns and forever discharge the said Bayly Crossing, LLC (Theodore B. Passyn, Julia Beall Passyn and Theodore Passyn III) from any and all actions or causes of action relating to the construction of the house on Lot ____ Phase ____ located at Bayly Crossing which Buyers have or may have against the said Bayly Crossing, LLC (Theodore B. Passyn, Julia Beall Passyn and Theodore Passyn III) now or in the future and also release the Builder from any and all items not covered either by said Limited Warranty or the Punch List. . . .

Bayly Crossing was not registered as a home builder with the HBRU during the period when these sales occurred. Seven homes were constructed on lots owned by Bayly Crossing, LLC between November 19, 2002, and October 22, 2004, and they were built by T.B. Passyn & Sons, Inc., an HBRU-registered home builder.[5] On October 22, 2004, Bayly Cross-

---

**4.** One of the ten sales contracts contained in the Joint Record Extract lacked this addendum.

**5.** T.B. Passyn & Sons, Inc.'s registration application listed the Passyns as principals of the company, which the HBRA defines to include:
(1) a sole proprietor, officer, director, general partner, or limited liability company manager of an applicant or registrant;

ing, LLC sold the remaining twenty-three lots to Gemcraft Forest Hill, LLC.

In 2002, the CPD initiated an investigation of T.B. Passyn & Sons, Inc.'s home building practices, which led to litigation in the Circuit Court for Talbot County and a related administrative action. The dispute was settled with a Final Order by Consent ("Consent Order"), executed on July 17, 2003, by Theodore B. Passyn, III, President, on behalf of T.B. Passyn & Sons, Inc., the Passyns individually, Jeston Harner, Jr. and Steven M. Sakamoto–Wengel, Assistant Attorneys General, and William Leibovici, "Assistant Attorney General and Chief [of the CPD]."[6] The Statement of Facts contained in the Consent Order included the following:

7. On January 7, 2003, the [HBRU] received an application to Renew Registration as a Home Builder in the State of Maryland for T.B. Passyn & Sons, Inc.[7]

8. The [HBRU] determined that T.B. Passyn & Sons, Inc. and its principals had a substantial history of open lawsuits, including an unsatisfied consumer judgment against its principal for a case that was pending after January 1, 2001, and liens that were not disclosed on the application.

9. Further, T.B. Passyn & Sons was served with an Administrative Subpoena from the Attorney General of Maryland requiring it to produce certain documents, including contracts pertaining to its activities as a builder on or before October 7, 2002. T.B. Passyn & Sons

---

(2) a person with at least 10 percent ownership in an applicant or registrant or a subsidiary of an applicant or registrant; and
(3) parents, spouses, and children with a combined 10 percent ownership in an applicant or registrant or a subsidiary of an applicant or registrant.
HBRA § 4.5–101(m).

**6.** The Consent Order was amended by agreement of the parties on August 12, 2003.

**7.** The Consent Order indicates that the initial registration application was submitted on December 1, 2000.

was not responsive to this request and the Division was forced to file a lawsuit against the company to obtain compliance, which also was not disclosed on the application forms.

10. Based on the failure of T.B. Passyn & Sons to disclose additional lawsuits, the unsatisfied consumer judgment, and the liens on the application forms, and the existence of unsatisfied judgment liens, the [HBRU] denied the application of T.B. Passyn & Sons to renew registration as a home builder in the State of Maryland on May 28, 2003.

Under the terms of the Consent Order, the HBRU agreed to renew T.B. Passyn & Sons registration as home builder provided they complied with certain conditions. The Consent Order specified:

12. This Final Order by Consent encompasses and pertains to new home building activities, whether individually or jointly, of Theodore B. Passyn, Sr., Theodore B. Passyn, III, Julia Beall Passyn and any entity in which they are or will be involved, and includes their agents, employees, successors and/or assigns. The Proponent and Respondents agree to the following.

13. None of the Respondents shall act as a Home Builder in Maryland as defined in Md.Code Ann., Bus. Reg. § 4.5–101(f) unless the Respondent has first registered with the Home Builders Registration Unit of the Consumer Protection Division as required by Md.Code Ann. Bus. Reg. § 4.5–301, et seq.

\* \* \*

19. Respondents agree that any violation of this Consent Order will be considered a second violation of the Home Builders Registration Act and the Consumer Protection Act for the purposes of Md.Code Ann., Com. Law II, § 13–410.

On March 1, 2005, the Passyns and T.B. Passyn & Sons, Inc. brought a declaratory judgment action against the CPD attacking the validity of the Consent Order. The Passyns and

T.B. Passyn & Sons, Inc. subsequently amended the complaint to add the State as a defendant, and to add a charge that the CPD and the State violated their right to due process under Article 24 of the Maryland Declaration of Rights.[8] The circuit court granted summary judgment for the State and the CPD. This Court dismissed the appeal as to T.B. Passyn & Sons, Inc. for lack of standing, and affirmed the judgment against the Passyns individually. *See T.B. Passyn & Sons, Inc., et. al. v. Consumer Protection Division, et. al.*, 185 Md.App. 741, 747, Appeal No. 1042, Sept. Term, 2007 (unreported opinion filed Apr. 6, 2009) (hereinafter *"T.B. Passyn & Sons "*).

On July 12, 2005, the CPD initiated the present litigation, when it filed with the Agency a Statement of Charges against the Passyns and Bayly Crossing, LLC, alleging violations of HBRA §§ 4.5–301 and 4.5–501 for failing to register as home builders; CPA § 13–303 for engaging in unfair and deceptive trade practices defined in CPA §§ 13–301(1) and 13–301(3); and CPA § 13–402(c)(1) for failing to comply with the Consent Order.

On July 14, 2005, the Agency granted the CPD's request for a hearing and delegated authority to conduct the contested case hearing and render proposed findings of fact and conclusions of law to the OAH. An evidentiary hearing was scheduled for September 13, 2005. The Passyns and Bayly Crossing, LLC filed a Motion for Summary Decision on August 12, 2005, which the CPD opposed. The OAH heard the opposing motions on September 13, 2005, in lieu of the scheduled evidentiary hearing.

Following the hearing, the OAH issued a Proposed Ruling on Motion recommending that the Motion for Summary Decision be granted and concluding that neither the Passyns nor Bayly Crossing, LLC violated the HBRA or CPA. The CPD filed exceptions to the Proposed Ruling, and on May 30, 2006, the Agency issued an order in which it concluded that "Bayly Crossing was required to have registered as home builder at

---

8. The complaint was amended three times.

the time that it entered into the contracts in which it undertook to construct new homes for consumers." The Agency then remanded the case to the OAH "for any further proceedings required to resolve factual or legal issues that have not been resolved by the Agency's ruling on this motion" and for the parties to "offer evidence for the record that they will want this agency to consider in determining the appropriate relief for any proven violations of the law."

On July 5, 2006, while the remand hearing was pending, the CPD filed an Amended Statement of Charges adding a charge for violating CPA § 13–303 by engaging in an unfair or deceptive trade practice as defined by CPA § 13–301(13).

The remand hearing was held on August 22, 2006, and the OAH issued its Proposed Ruling and Decision on December 15, 2006, in which the Administrative Law Judge reached the following conclusions of law:

> Based upon the foregoing I conclude as a matter of law that the Respondents violated [HBRA] §§ 4.5–301 and 4.5–501 by failing to register as a home builder under the [HBRA].
>
> I further conclude as a matter of law that the Respondents violated [CPA] § 13–402(c)(1) by failing to comply with the Final Order of Consent by not registering as a home builder under the [HBRA].
>
> I also conclude as a matter of law that the Respondents violated [CPA] § 13–301(13) by using a contract related to the sale of single family residential consumer realty that contained a clause limiting or precluding the buyer's right to obtain consequential damages as a result of the seller's breach or cancellation of the contract.
>
> I further conclude that the Respondents did not violate [CPA] §§ 13–301(1) and 13–301(3) because they did not make misleading oral or written statements or representations that had the capacity, tendency or effect of deceiving or misleading consumers and did not omit a material fact by failing to register as home builders under the

[HBRA] or by failing to inform purchasers that they were not registered as home builders under the [HBRA].

Both parties filed exceptions to the Proposed Ruling and Decision with the Agency. On August 3, 2007, the Agency issued a Final Order, Findings of Facts and Conclusions of Law, and a Ruling on Exceptions. The agency first concluded that Bayly Crossing, LLC violated HBRA §§ 4.5–301 and 4.5–501 by failing to register as a home builder. The Agency reasoned as follows:

The [HBRA] defines a "contract purchaser" as "a person who has entered into a contract with a home builder to purchase a new home . . . ." § 4.5–101(c). It defines "home builder" as a "a person that undertakes to erect or otherwise construct a new home." § 4.5–101(f)(1). And, it requires a contract for the initial sale of a new home to include the "builder registration number of the seller of the new home." § 14–117(j)(2)(i).[9]

All of these sections support the proposition that the party entering into the contract with a consumer must be a registered home builder. The term "undertake" used in defining a home builder means to "put oneself under obligation to perform." Webster's Third International Dictionary (1968). Bayly Crossing placed upon itself the obligation to "sell and construct" a new home for the consumer. Even if the contract had used different words, the result would have been the same as long as the contract still provided that the consumer was purchasing a new home.

In addition to the obligations Bayly Crossing assumed in its contract with consumers, Maryland law also places on it the obligation to pay for all consequential damages caused by its breach or cancellation of the contract. Md.Code Ann., Com. Law II § 13–301(13) (2005). In other words, Bayly Crossing remains liable if a purchaser is able to establish, among other things, that a new home was not

---

9. This section of the HBRA is located in the Real Property Article of the Maryland Code. All remaining portions of the HBRA are located in the Business Regulation Article. *See* 2000 Md. Laws, Chap. 522, 2783.

constructed in the manner or with the quality required by the contract.

The exemption of a real estate developer from having to register provided by § 4.5–101(f)(3)(iv) has to be read in harmony with the [HBRA's] requirements relating to the purchasers and sellers of new homes. This exemption was intended to cover developers who do not play a direct role in the transactions with consumer [sic]. By entering into contracts undertaking to provide new homes to consumers, Bayly Crossing was acting as a home builder as that term is defined in the Act.

In summary, after applying the uncontested facts to the [HBRA], this Agency has concluded that Bayly Crossing was required to have registered as a home builder at the time it entered into the contract in which it undertook to construct new homes for consumers.

The Agency next detailed multiple violations of the CPA by Bayly Crossing, LLC. The Agency, citing *Golt v. Phillips,* 308 Md. 1, 9–10, 517 A.2d 328 (1986), concluded that Bayly Crossing violated CPA §§ 13–301(1) and 13–303 by "implicitly [and falsely] represent[ing] in their form contracts that Bayly Crossing L.L.C. was a properly registered home builder." The Agency found that the primary source of this misrepresentation was the statement in the contract that Bayly Crossing, LLC would "sell and construct" a new home for the consumer.

Again citing *Golt,* the Agency further concluded that Bayly Crossing, LLC violated CPA §§ 13–301(3) and 13–303 by failing to disclose to consumers a material fact that it was not a registered home builder. The Agency additionally concluded that the provision contained in the addendum signed by consumers that discharged Bayly Crossing, LLC from "any and all actions or causes of actions relating to the construction of the house" restricted consumers' right to bring actions for consequential damages resulting from the seller's breach or cancellation of the contract, and thus violated CPA §§ 13–301(13) and 13–303.

Finally, the Agency concluded that the Passyns violated the provision of the Consent Order requiring any entity they became associated with to register as a home builder, if required. The Agency determined that the Passyns' non-compliance with the Consent Order violated CPA § 13–402(c) because "the parties agreed that [the Consent Order] would be subject to enforcement under Subtitle 4 of the [CPA] and that any such violation would be deemed a second violation of [the CPA]."

For these violations, the Agency imposed penalties and costs on the Passyns and Bayly Crossing, LLC, jointly and severally, in the amount of $25,000 and $6,781.98, respectively. The Agency's determination of whether to impose a civil penalty was guided by its analysis of the five factors in CPA § 13–410(d) as follows:

### 1. *Severity*

The Respondents in this case failed to register as a home builder that was engaged in entering into contracts with consumers in which it agreed to sell and construct new homes for the consumers. Respondents also used a general release form that violated the [CPA]. The Respondents also violated the terms of a Final Order by Consent that they had entered into in 2003. All of the Respondents' violations are serious.

### 2. *Good Faith*

The Respondents did not operate in good faith in their dealings with the Proponent. The Respondents entered into a Final Order by Consent with the Proponent on July 17, 2003 in which they agreed to register in the future all their entities that were operating as home builders under the HBRA. At that time the Respondents had already sold four new homes to consumers through Bayly Crossing L.L.C. and subsequent to entering into the Final Order by Consent, they sold another five new homes to consumers through this unregistered entity.

3. *Prior Violations*

There is a history of prior violations as evidenced by the Final Order by Consent previously entered into by the individual Respondents.

4. *Deterrent Effect of Amount of Penalty*

The civil Penalty must be sufficient to deter both the Respondents as well as other people from engaging in this or similar type of illegal conduct in the future. The Respondents were more than willing to ignore the HBRA law even after they had had a previous legal action brought against them for failing to comply with the Act. Imposing a substantial civil penalty is intended to deter them from ever doing anything like this again. A civil penalty has to convince these people that they will lose a lot of money if they get caught violating the law. Changing the monetary bottom line is the only thing that will alter their conduct in the future.

5. *Sufficiency of the Cease and Desist Order, including Restitution*

Consumers would not be protected from the Respondents in this case if the Respondents were simply ordered to stop violating the law in the future. That is what the Final Order by Consent did.

On August 29, 2007, Bayly Crossing and the Passyns filed a petition for judicial review of the Agency's Final Order. Following a hearing on July 14, 2008, the Circuit Court for Baltimore City issued an opinion affirming the Final Order. Bayly Crossing, LLC and the Passyns responded with this appeal.

## Questions Presented

Appellants set out the following questions for our review, which we have rephrased and consolidated:

1. Was the Agency's decision that Bayly Crossing, LLC was required to register as a home builder under the

HBRA based upon an erroneous interpretation of law or unsupported by substantial evidence?

2. Was the Agency's decision that Bayly Crossing, LLC was required to disclose its unregistered status and that failure to disclose such status constituted a misrepresentation under the [CPA] based upon an erroneous interpretation of law or unsupported by substantial evidence?

3. Was the Agency's decision that appellants violated CPA § 13–402(c)(1) by failing to comply with the Consent Order based upon an erroneous interpretation of law or unsupported by substantial evidence? [10]

4. Was the Agency's decision that it was not required to issue a new delegation of authority to the OAH after the Amended Statement of Charges was filed based upon an erroneous interpretation of law or unsupported by substantial evidence?

5. Was the Agency's decision that Bayly Crossing, LLC violated the CPA by limiting a buyer's right to obtain consequential damages for breach or cancellation of the contract based upon an erroneous interpretation of law or unsupported by substantial evidence?

6. Was the Agency's decision that appellants were jointly and severally liable for the actions of Bayly Crossing, LLC based upon an erroneous interpretation of law or unsupported by substantial evidence?

7. Was the Agency's assessment of civil penalties against appellants arbitrary and capricious or excessive?

As we explain below, we answer these questions in the negative, and thus, we shall affirm the decision of the Agency.

## Standard of review

Judicial review of the Agency's Final Order is governed by SG § 10–222(h), which provides that we may:

---

**10.** The Agency's conclusion that appellants violated CPA § 13–402(c)(1) was premised on its conclusion that appellants failed to comply with the Consent Order. Accordingly, we have consolidated appellants' separate challenges to these conclusions into a single issue.

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

The "substantial evidence" standard of review applies to agency fact-finding and application of law to facts. *Consumer Prot. Div. v. Morgan,* 387 Md. 125, 160, 874 A.2d 919 (2005). "The standard for substantial evidence review is whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Id.* (citation and quotation marks omitted). Though we review an agency's legal conclusion de novo, "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Christopher v. Montgomery County HHS,* 381 Md. 188, 199, 849 A.2d 46 (2004) (quoting *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 69, 729 A.2d 376 (1999)). Accordingly, "judicial review of administrative agency action is [generally] narrow. The reviewing court must not substitute its judgment for the expertise of those persons who constitute the administrative agency." [11] *George,* 383 Md. at 512, 860 A.2d 896 (quoting *Watkins v. Dept. of Public Safety*

---

**11.** Because we apply the same statutory standards as the circuit court, we review the decision of the agency directly, as opposed to reviewing the decision of the lower court. *Consumer Prot. Div. v. George,* 383 Md. 505, 512, 860 A.2d 896 (2004).

*and Correctional Services,* 377 Md. 34, 45–46, 831 A.2d 1079 (2003)) (internal quotation marks omitted).

With few exceptions, the facts in this case are not in dispute. Consequently, our review is focused on the Agency's legal conclusions, its application of law to facts, and its adherence to proper procedure.

## Discussion

### *Bayly Crossing, LLC's standing*

Before responding to appellants' contentions, we must first address the CPD's assertion that Bayly Crossing, LLC lacks standing to pursue this appeal because it forfeited its corporate charter. Appended to CPD's brief is a certificate from the State Department of Assessments and Taxation ("SDAT"), dated April 24, 2009, stating that Bayly Crossing, LLC's charter was forfeited by SDAT on October 5, 2007. As of the date this opinion was filed, SDAT's website continues to list Bayly Crossing, LLC's corporate charter as forfeited. Appellants' reply brief makes no mention of the status of Bayly Crossing, LLC's charter, and does not respond to the CPD's assertion that it lacks standing to pursue this appeal. Consequently, we take judicial notice pursuant to Maryland Rule 5–201 that Bayly Crossing, LLC forfeited its corporate charter on October 5, 2007, and has not thus far filed articles of revival.

We addressed this same issue in *T.B. Passyn & Sons,* where we likewise took judicial notice that T.B. Passyn & Sons, Inc. had forfeited its corporate charter, and dismissed its appeal for lack of standing. *Id.* at 22–27. There we explained that "[o]nce a charter has been forfeited, the corporation immediately becomes a legal non-entity, a lifeless corpus." *Id.* at 24 (citing *Dual v. Lockheed Martin Corp.,* 383 Md. 151, 163, 857 A.2d 1095 (2004)). We also explained "that the revival of a corporate charter d[oes] not relate back so as to permit an appeal when the notice of appeal was filed during the time that the corporate charter was forfeit." *Id.* at 25 (citing *Hill Construction v. Sunrise Beach, LLC,* 180 Md.App.

626, 952 A.2d 357 (2008)). Thus, as in *T.B. Passyn & Sons,* the forfeiture of Bayly Crossing, LLC's corporate charter and its failure to file articles of revival render its appeal a nullity. Accordingly, Bayly Crossing, LLC is dismissed as a party to this appeal for lack of standing.

### *Bayly Crossing, LLC's failure to register as a home builder*

The linchpin of this dispute is the Agency's determination that Bayly Crossing, LLC was a "home builder" and, therefore, required to register as such under the HBRA. The HBRA defines a "home builder" as "a person that undertakes to erect or otherwise construct a new home." HBRA § 4.5–101(f)(1). Subject to certain exceptions, "home builder[s]" must register with the HBRU. HBRA §§ 4.5–301, 4.5–303(a)(1). The definition of "home builder" specifically excludes "a real estate developer who does not construct new homes." HBRA § 4.5–101(f)(3)(iv). The Passyns argue that they fall within the exclusion because they merely contracted to sell new homes and did not, in their individual capacities or through Bayly Crossing, LLC, undertake to construct or erect new homes. The Passyns argue that the Agency's conclusion that they acted as home builders under the HBRA was "based entirely upon the boilerplate phrase 'sell and construct' within contracts used by Bayly Crossing" and ignored the real estate developer's exemption. The Passyns further note that T.B. Passyn & Sons, Inc., the entity that performed the actual construction, was plainly disclosed as the home builder in its contracts.

The CPD's arguments in response mirror the rationale provided by the Agency in its Final Order. Specifically, the CPD argues that whether the Passyns or Bayly Crossing, LLC intended to perform the actual construction is irrelevant because by agreeing to "sell and construct" new homes, they "undertook the legal obligation to construct homes for consumers." The CPD premises this argument on the assertion that " 'undertake,' as used in defining a home builder, means 'to put oneself under obligation to perform.' " The CPD also suggests that, irrespective of the contract language, the seller

of a new home must register with the HBRU. The CPD points to the requirement in Maryland Code, § 14–117(j)(2)(i), which requires the contract for an initial sale of a new home to include the "builder registration number of the seller of the new home." Moreover, CPD argues that, if the registration requirement was determined by who performed the actual construction, there would be no need to exempt from registration lenders who hire a second registered home builder to complete the first home builder's unfinished project. *See* HBRA § 4.5–501(c). Finally, the CPD argues that the real estate developer's exemption "was intended to cover developers who do not play a direct role in the sale of new homes to consumers."

We view the use of the term "undertake[ ]" in the definition of "home builder" as dispositive on this issue.

> The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. In order to ascertain the intent of the Legislature, we begin with the plain language of the statute, and if that language is clear and unambiguous, we look no further than the text of the statute.

*In re Najasha B.*, 409 Md. 20, 27, 972 A.2d 845 (2009) (citations and quotation marks omitted). The definitions of "undertake" listed in Webster's New Twentieth Century Dictionary (1968, 2nd ed.) include "to give a promise or pledge that; to contract," "to promise; to guarantee," and "to make oneself responsible for." Thus, by defining a home builder as one who "*undertakes* to erect or otherwise construct a new home," HBRA § 4.5–101(f)(1) (emphasis added), the legislature clearly intended to capture those who incur the obligation to build a new home, rather than just those who actually build the home.

Bayly Crossing, LLC undertook the legal obligation to construct a home for the purchasers by agreeing to "sell and construct" a new home. The contractual provision in which the "SELLER"—Bayly's Crossing, LLC—agreed to provide

the buyer with a home substantially similar "to SELLER'S Model House" reaffirmed this obligation.

The Passyns argue that the "sell and construct" language is mere "boilerplate," and point to the fact that T.B. Passyn & Sons, Inc. is listed as the actual builder. Under the well-settled principle of objective contract interpretation we "give effect to the clear terms of the contract regardless of what the parties to the contract may have believed those terms to mean." *Clancy v. King*, 405 Md. 541, 557, 954 A.2d 1092 (2008) (quotation marks and citation omitted). Thus, the Passyns' subjective intent in agreeing to "sell and construct" new homes is irrelevant. According to the clear and unambiguous terms of the contract, Bayly Crossing, LLC "under[took] to erect or otherwise construct a new home" and was therefore a "home builder" under HBRA § 4.5–101(f)(1).

■ Our conclusion is also supported by looking at the entirety of the statute and reading the definition of "home builder" in context. As stated, "home builder" is defined in HBRA § 4.5–101(f) as "a person that undertakes to erect or otherwise construct a new home." It includes, *inter alia*, "a custom home builder as defined in § 10–501 of the Real Property Article," id, and "a new home builder subject to § 10–301 of the Real Property Article." *Id.* A "custom home builder" is defined as "any person who seeks, enters into, or performs custom home contracts." Maryland Code (2003 Repl.Vol.), § 10–501(d) of the Real Property Article ("RP"). The requirements in RP § 10–301 apply to the sale and purchase of a new single family residential unit which is not completed at the time of contracting, and the "vendor or builder" required the payment of a sum of money by the purchaser prior to completion of the unit. A "home builder," as defined in HBRA § 4.5–101(f), "does not include," *inter alia*, "subcontractors or other vendors hired by the registrant to perform services or supply materials for the construction of a new home who do not otherwise meet the requirements of this title," *id.*, "a real estate developer who does not construct homes," *id.*, or "a financial institution that lends funds for the

construction or purchase of residential dwellings in the State." *Id.* As previously observed, RP § 14–117(j)(2) applies to a contract for the initial sale of a new home. The above provisions lead us to the conclusion that the HBRA is aimed at the initial sale by someone in the business of developing real estate to a consumer of (1) an unimproved lot when the seller undertakes to build or have built a home on that lot, or (2) a lot on which a new home has been built. It is not aimed at the sale of an unimproved lot by a seller who does not undertake to supply a new home, and the purchaser then undertakes to build or have built a new home. An exempt developer is one who does not undertake to sell or supply a new home.

### *Violations of CPA §§ 13–301(1), 13–301(3), and 13–303*

The Passyns next challenge the Agency's conclusion that they violated CPA § § 13–301(1), 13–301(3), and 13–303 by implicitly representing in their contracts that Bayly Crossing was a registered home builder and failing to disclose the fact that Bayly Crossing was not registered. CPA § 13–303 prohibits unfair or deceptive trade practices in, among other things, the sale of consumer realty. CPA § 13–301(1) defines as an unfair or deceptive trade practice as any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." CPA § 13–301(3) additionally includes as an unfair or deceptive trade practice "[f]ailure to state a material fact if the failure deceives or tends to deceive."

The Passyns first argue that Bayly Crossing, LLC's agreement to "sell and construct" homes did not amount to an unfair or deceptive practice as defined by CPA § 13–301(1) because the phrase did not amount to an implicit representation that Bayly Crossing, LLC was a registered homebuilder. The Passyns point out that the contract identified T.B. Passyn & Sons, Inc. as the homebuilder. Second, the Passyns argue that the HBRA does not require disclosure of unregistered status prior to contracting with a consumer, and thus their

failure to do so was not an omission of a material fact as specified by CPA § 13–301(3).

CPD cites *Golt v. Phillips*, 308 Md. 1, 517 A.2d 328 (1986), for the proposition that Bayly Crossing, LLC implicitly and falsely represented to consumers that it was a registered home builder when it agreed to construct new homes. CPD again cites *Golt* to argue that Bayly Crossing, LLC's failure to disclose its unregistered status constituted an omission of a material fact that deceived consumers.

In *Golt*, John Golt rented an apartment in a multiple family dwelling unit in response to a print advertisement placed by Phillips Brothers and Associates ("Phillips Brothers"). *Id.* at 5, 517 A.2d 328. Golt complained to the Baltimore City Housing Department after Phillips Brothers failed to perform several repairs, which led a housing inspector to discover that Phillips Brother lacked the necessary license to operate the building as a multiple dwelling. *Id.* The Court of Appeals concluded that advertising and renting an unlicensed apartment violated CPA § § 13–301(1) and (3). *Id.* at 9, 517 A.2d 328. The Court reasoned as follows:

> Implicit in any advertisement and rental of an apartment is the representation that the leasing of the apartment is lawful. Baltimore City Code, Art. 13, § 1101 (1983 Repl. Vol.), expressly prohibits the operation of any multiple family dwelling without a license or temporary certificate. As Phillips Brothers had neither a license nor a temporary certificate, it violated the City Code. Phillips Brothers could not provide Golt with the unimpeded right to possession during the lease term. Consequently, Phillips Brothers['] advertisement and rental of the apartment was a "misleading … statement … or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." Maryland Code (1983 Repl.Vol.), § 13–301(1) of the Commercial Law Article.

\* \* \*

Finally, Phillips Brothers also violated § 13–301(3) of the CPA, which states that the failure to disclose a material

fact, which deceives or tends to deceive, is an unfair or deceptive trade practice. The lack of proper licensing is a material fact that Phillips Brothers failed to state. In addition, failure to disclose this fact deceived Golt or at least had the tendency to deceive consumers. An omission is considered material if a significant number of unsophisticated consumers would attach importance to the information in determining a choice of action. *See, e.g., Charles of the Ritz Distributors Corp. v. Federal Trade Commission,* 143 F.2d 676, 679–80 (2d Cir.1944); *Gulf Oil Corp. v. Federal Trade Commission,* 150 F.2d 106, 109 (5th Cir.1945); *cf.* Restatement (Second) of Torts, § 538 (1977) (Under common law fraud, a fact is deemed material if a reasonable person would attach importance to its existence in determining his choice of action.). In our view, the lack of proper licensing for an apartment under most circumstances is a material fact that any tenant would find important in his determination of whether to sign a lease agreement and move into the premises.

*Id.* at 9–10, 517 A.2d 328.

The Passyns attempt to distinguish *Golt* by arguing that "Bayly Crossing's registration status would not be important because the actual builder was registered and disclosed to purchasers." The Passyns further argue that there is no evidence in the record that consumers would have considered Bayly Crossing, LLC's lack of registration an important factor in their decision to purchase a home. We are unpersuaded.

■ As in *Golt,* the CPA's objective of instituting "strong protective and preventive steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices from occurring in Maryland," is directly applicable to the agreements between Bayly Crossing, LLC and consumers. *Golt,* 308 Md. at 8, 517 A.2d 328; *see* CPA § 13–102(a) ("The General Assembly of Maryland finds that consumer protection is one of the major issues which confront all levels of government, and that there has been mounting concern over the increase of deceptive

practices in connection with sales of merchandise, *real property,* and services and the extension of credit.") (emphasis added). The HBRA prohibits acting as a home builder in Maryland without first registering with the HBRU. HBRA § 4.5–301. Bayly Crossing, LLC acted as a homebuilder by agreeing to construct new homes for consumers despite its failure to register. By doing so, Bayly Crossing, LLC was implicitly and falsely representing to consumers that it could lawfully construct new homes.

Furthermore, lack of proper registration is a material fact that most unsophisticated consumers would consider important when deciding whether to purchase a new home. HBRA § 4.5–605 states that "[a] contract for the performance of any act for which a home builder registration number is required is not enforceable unless the home builder was registered at the time that the contract was signed by the owner." Certainly, consumers would find important the fact that their contract to purchase a new home was rendered unenforceable by the seller's unregistered status.

Finally, the contract's indication that T.B. Passyns & Sons, Inc. would perform the actual construction, presumably as subcontractor, is irrelevant. As we explained above, it was Bayly Crossing, LLC, not T.B. Passyn & Sons, Inc., that undertook the legal obligation to construct new homes for consumers. We, therefore, hold that the Agency properly concluded that Bayly Crossing, LLC and the Passyns violated CPA §§ 13–301(1), 13–301(3) and 13–303.

### *Violations of the Consent Order and CPA § 13–402(c)(1)*

The Passyns next dispute the Agency's conclusion that they violated CPA § 13–402(c)(1) by failing to comply with the terms of the Consent Order. CPA § 13–402(c)(1) provides that "[i]t is a violation of this title to fail to adhere to any provision contained in a written assurance of discontinuance or settlement agreement." Paragraphs 19 and 20 of the Consent Order state:

19. Respondents agree that any violation of this Consent Order will be considered a second violation of the

Home Builders Registration Act and the Consumer Protection Act for the purposes of Md.Code Ann., Com. Law II, § 13–410.

20. Pursuant to Md.Code Ann., Com. Law II § 13–403, Respondents are hereby notified that if the [CPD] determines that the Respondents have failed to comply with this Final Order by Consent within thirty (30) days following execution of the Final Order by Consent, the Consumer Protection Division shall proceed with enforcement of the Final Order by Consent pursuant to Subtitle 4 of the Consumer Protection Act.

The Passyns argue that the Consent Order arose out of a registration proceeding under the HBRA rather than a conciliation process under CPA § 13–402, and consequently, the Consent Order is not a settlement agreement subject to CPA § 13–402(c)(1). This argument ignores the plain language of the Consent Order notifying the Passyns that the agreement is subject to enforcement under Subtitle 4 of the CPA and that any subsequent violation would constitute a second violation of the CPA. Thus, the CPD is not acting with "boundless authority" to enforce all settlement agreements under CPA § 13–402(c)(1) as the Passyns claim. Rather, the CPD is simply enforcing the Consent Order in this case according to its terms.

 The Passyns further suggest that paragraph 19 of the Consent Order violates due process and is unenforceable, arguing that the Agency cannot "force" them to agree that a violation of the CPA be treated as a second violation when the agency found no violation in the first instance. We refuse to entertain this argument, as the proverbial ship has long since sailed with respect to the validity of the Consent Order. First, Maryland courts do not ordinarily entertain appeals from a consent judgment. *See Franzen v. Dubinok,* 290 Md. 65, 68–69, 427 A.2d 1002 (1981) (and cases cited therein). Second, the Passyns already sought an interpretation and clarification of the Consent Order before the Agency, which ultimately led to an unsuccessful challenge to the validity of

the Consent Order in this Court. *See T.B. Passyn & Sons, supra.* At no time during those proceedings did the Passyns raise the objections they now make regarding paragraph 19.

Finally, in an effort to avoid individual liability for violating the Consent Order, the Passyns argue that the Consent Order "does not require the *individual* [a]ppellants to register as *individual* home builders and the only homebuilding activities that are alleged to have occurred were those of Bayly Crossing." What the Passyns appear to mean by this statement is that they can only be held individually liable if they act as home builders and fail to register in their individual capacities. The terms of the Consent Order clearly indicate otherwise. The Consent Order states that it applies "to the new home building activities, whether individually or jointly, of [the Passyns] *and* any entity in which they are or will be involved." (emphasis added). Thus, when the Passyns operated Bayly Crossing, LLC as an unregistered home building entity, they subjected themselves to individual liability under the Consent Order for failure to register.

*The CPD's authority to file an amended statement of charges after the Agency has delegated authority to the OAH*

The Passyns next contend that the CPD failed to comply with proper procedure when it filed an Amended Statement of Charges after the Agency had delegated authority to the OAH to conduct the contested case hearing and render proposed findings of fact and conclusions of law. As a consequence of this failure, the Passyns assert that the added charge for violating CPA § 13–301(13) must be thrown out.

SG § 10–205(a)(1)(ii) provides agencies with authority to delegate contested case hearings to the OAH. In cases before the Agency, authority to delegate contested case hearings is given to the Chief of the CPD. Md.Code Regs. ("COMAR") 02.01.02.04. "Unless the Agency notifies the parties of a different delegation, the [scope of] authority delegated [includes] issu[ing] proposed findings of fact and proposed conclusions of law, but not recommend[ing] proposed relief." *Id.*

The Passyns claim the requirement that the Agency review amendments to a statement of charges lies in COMAR 02.01.02.03. That regulation states:

A. Filing a Petition.

(1) Any person may file a petition with the Agency.

(2) The petition shall:

(a) Be accompanied by a statement of charges; and

(b) Show cause why a hearing on the matters raised should be granted.

B. Review by the Agency. The Agency shall:

(1) Review each petition; and

(2) Determine whether to hold a hearing under Commercial Law Article, § 13–403, Annotated Code of Maryland.

C. Unless notice issued under Regulation .06 of this chapter states otherwise, the [CPD] is the party proponent.

None of the regulations above specify a procedure for the Agency to follow if the petitioner amends the initial statement of charges. The CPD urges us to look to Maryland Rule 2–341 for guidance. That rule permits parties in civil actions before the circuit court to amend pleadings without leave of court up to 30 days before the scheduled trial date, or with leave of court thereafter. Md. Rule 2–341. It has long been the policy of Maryland courts to freely allow amendments in order to promote justice. *See, e.g., Jacobson v. Julian,* 246 Md. 549, 554, 229 A.2d 108 (1967); *Staub v. Staub,* 31 Md.App. 478, 480, 356 A.2d 609 (1976), *cert. denied,* 278 Md. 735 (1976); *E.G. Rock, Inc. v. Danly,* 98 Md.App. 411, 428, 633 A.2d 485 (1993). Amendments should not be allowed, however, if they result in prejudice to the opposing party or undue delay. *Robertson v. Davis,* 271 Md. 708, 710, 319 A.2d 816 (1974); *Danly,* 98 Md.App. at 428, 633 A.2d 485.

Though Rule 2–341 does not apply to administrative proceedings, we see no reason to depart from its guiding principles here. The Amended Statement of Charges was

filed July 5, 2006, well before the August 22, 2006 hearing at the OAH. Moreover, the added charge for violating CPA § 13–303 by engaging in an unfair or deceptive trade practice under CPA § 13–301(13) was based on the same facts—the sales contract used by Bayly Crossing, LLC—and the same regulatory scheme—the CPA provisions governing unfair and deceptive trade practices—as the initial Statement of Charges. The Passyns place great emphasis on the fact that the CPD deprived the Agency of the opportunity to review the amendments by filing the Amended Statement of Charges after the Agency delegated the case to the OAH. As the Agency noted, however, it fully maintained its authority to review all charges brought against the Passyns because it rendered the final decision in the case. Indeed, we fail to see how the Passyns suffered any prejudice as a result of the timing of the Amended Statement of Charges and shall, therefore, decline their request to strike the added charge.

### *Violation of CPA §§ 13–301(13) and 13–303*

 The Passyns next attack on the merits the Agency's finding that they violated CPA § 13–303 by engaging in an unfair or deceptive trade practice as defined in CPA § 13–301(13). CPA § 13–301(13) defines as an unfair or deceptive trade practice "[u]se by a seller, who is in the business of selling consumer realty, of a contract related to the sale of a single family residential realty, precluding the buyer's right to obtain consequential damages as a result of the seller's breach or cancellation of the contract." The portion of the contract found to meet this definition discharged

> Bayly Crossing, LLC (Theodore B. Passyn, Julia Beall Passyn and Theodore Passyn III) from any and all actions or causes of action relating to the construction of the house on Lot _____ Phase _____ located at Bayly Crossing which Buyer have or may have against the said Bayly Crossing, LLC (Theodore B. Passyn, Julia Beall Passyn and Theodore Passyn III) now or in the future . . .

The Passyns argue that the release does not run afoul of CPA § 13–301(13) because by its terms the release applies

only to construction-related causes of action, which arise only after the contract is performed and the buyer takes possession of the premises. We fail to see the distinction drawn by the Passyns between construction-related claims and claims for consequential damages resulting from the seller's breach or cancellation of the contract. As CPD points out, construction-related claims could arise well before the contract for sale is performed and the buyer takes possession of the house. CPD supports its position by citing the testimony of Alan Ritz, who described the numerous construction-related problems that arose after he contracted with Bayly Crossing, LLC for the sale and construction of a home, which ultimately led him to forgo settlement. Indeed, in cases such as this one, where the contract for sale and the construction contract are one and the same, a construction-related claim could amount to a breach of contract by the seller, and entitle the buyer to consequential damages. The release from "any and all causes of action" would preclude a claim for consequential damages in this situation, and thus violates CPA § 13–301(13).

### Joint and Several Liability

■ The Passyns next contend that the Agency erred by finding them jointly and severally liable for all of the charges. *Morgan* established the test for holding individuals jointly and severally liable when the Agency determines that a corporation has violated the CPA: The Agency must prove that "(1) the individual participated directly in or had authority to control the deceptions or misrepresentations, and (2) the individual had knowledge of the practices." *See* 387 Md. at 176, 874 A.2d 919 (adopting the test used by the United States Court of Appeals for the Seventh Circuit in *Fed. Trade Comm'n v. Amy Travel Serv., Inc.*, 875 F.2d 564 (7th Cir. 1989)). The Passyns argue that the *Morgan* holding was limited to an award of restitution and does not apply to civil penalties. Moreover, the Passyns assert that there was no record evidence to "support a finding that any of the [violations of the HBRA and CPA by Bayly Crossing, LLC] were undertaken with the participation, control and knowledge to find individual liability."

First, we disagree with the Passyns' assertion that the *Morgan* test applies only to restitution. The *Morgan* Court cited with approval our decision in *State Collection v. Kossol*, 138 Md.App. 338, 771 A.2d 501 (2001), upholding the Agency's imposition of joint and several liability for payment of restitution *and* civil penalties. *Morgan*, 387 Md. at 176, 874 A.2d 919 (citing *Kossol*, 138 Md.App. at 348–49, 771 A.2d 501).

 The Passyns correctly point out, however, that *Morgan* and *Kossol* addressed only violations of the CPA, and a not a failure to register under the HBRA. Nonetheless, the Consent Order, by its terms, applies "to the new home building activities, whether individually or jointly, of [the Passyns] and any entity in which they are will be involved." The Passyns argue that the Consent Order did not obligate them to register individually as home builders if they conducted home building activities through an entity. The Agency did not, however, conclude that the Passyns were individually liable because they failed to register individually; rather, the Agency premised the Passyns' individual liability on their joint participation in an unregistered home building entity. The terms of the Consent Order are sufficient to support individual liability in this situation.

Second, we believe the evidence was sufficient to conclude that the Passyns possessed the control and knowledge necessary to impose joint and several liability for the violations committed by Bayly Crossing, LLC. "The degree of participation in business affairs is probative of knowledge." *Kossol*, 138 Md.App. at 349, 771 A.2d 501 (quoting *Amy Travel*, 875 F.2d at 574). The Passyns were the sole members of Bayly Crossing, LLC, with each holding a one-third interest; Julia Passyn executed the sales contracts on behalf of Bayly Crossing, LLC; Julia Passyn and Theodore B. Passyn, III represented Bayly Crossing, LLC at settlements with consumers; and each of the Passyns executed the Consent Order making them individually responsible for the home building activities of any entity in which they became involved. Thus, the Passyns participated directly in or had the authority to control

the illegal acts of Bayly Crossing, LLC, and either knew or should have known of its practices.

### The civil penalty amount

■■■ The Passyns finally contend that the civil penalty of $25,000 imposed by the Agency was "excessive and greatly disproportionate to the [violations found]." Violations of the CPA are subject to a maximum fine of $1,000 for each violation, or a maximum of $5,000 for subsequent repeat of the same violation. CPA § 13–410(a), (b). The Agency must consider the following factors in determining the amount of the penalty:

(1) The severity of the violation for which the penalty is assessed;

(2) The good faith of the violator;

(3) Any history of prior violations;

(4) Whether the amount of the penalty will achieve the desired deterrent purpose; and

(5) Whether the issuance of a cease and desist order, including restitution, is insufficient for the protection of consumers.

CPA § 13–410(d).

For violations of the HBRA, the Agency is authorized to impose a maximum of $1,000 "for each day of unlawful practice." HBRA § 4.5–502(b)(2). The Passyns take issue with the Agency's findings with respect to the penalty factors specified by CPA § 13–410(d), and argue that the Agency erred as a matter of law by assessing civil penalties for the HBRA violations under this provision as opposed to the HBRA's own penalty provision. We begin with the Agency's treatment of the CPA § 13–410(d) factors.

■■■ The Passyns assert that the Agency's finding that the violations were serious lacks discussion or explanation, and fails to consider that no one was harmed by the violations. First, the fact that the Passyns were subject to a Consent Order requiring them to register any home building entity they became involved in yet still failed to do so is a sufficient

basis for us to defer to the Agency's assessment that the violations were serious. Second, by passing the CPA, the legislature endeavored to "take strong protective and preventive steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices from occurring in Maryland." CPA § 13–102(b)(3). The prophylactic intent of the CPA could not be more plainly stated. Thus, a finding of actual harm to consumers is unnecessary for the Agency to conclude that the violations were serious.

The Passyns next dispute as unsupported the Agency's finding that the Passyns did not deal in good faith with the CPD. On the contrary, the Agency noted Bayly Crossing, LLC was acting as an unregistered home builder both before and after the Passyns executed the Consent Order in which they agreed to register any of their home building entities.

The Passyns also claim that the Agency erred in finding that they had a history of past violations. According to the Passyns, the Consent Order arose from a registration proceeding, not an enforcement action, and thus does not evidence a history of violations. Though the Consent Order does not technically find that the Passyns violated either the CPA or HBRA, it does detail a history of recalcitrance and nondisclosure in their dealings with the CPD, including failing to respond to an administrative subpoena, and failing to disclose open lawsuits and unsatisfied judgments on their registration renewal application. Moreover, the Consent Order specified that a violation of its terms would be considered a second violation of the HBRA and CPA. We view this as sufficient to characterize the Passyns as repeat offenders.

As to the fourth and fifth factors, the Passyns protest the Agency's imposition of a monetary penalty instead of a cease and desist order by repeating the same assertions that they are not repeat offenders and caused no actual harm to consumers. We defer to the Agency's determination that only a substantial monetary penalty will deter future violations, and that a cease and desist order would be ineffective. As the

Agency noted, the Consent Order demanded that the Passyns comply with the law and they failed to do so. Thus, a harsher penalty was warranted, and even the Passyns acknowledge that the monetary penalty imposed was far lower than that requested by the CPD.

Finally, the Passyns' argument that the Agency erroneously imposed civil penalties for HBRA violations under CPA § 13–410(d) is entirely without merit. In determining the amount of the penalty, the Final Order stated that the Passyns were subjected to fines for "each of the 827 days that Bayly Crossing, LLC operated as a homebuilder without being registered." Though not specifically cited, the Agency was clearly referencing the penalty provision in HBRA § 4.5–501(b)(2), which treats each day of non-compliance as a separate violation. Furthermore, after separately detailing each violation of the CPA, the Agency stated that "the potential civil penalty for all of these violations under the applicable sections of the [CPA] *and [HBRA]* . . . is very large." (emphasis added). We are satisfied that the agency was well aware of the separate penalty provisions for the CPA and HBRA, and assessed the civil penalty accordingly.

**APPEAL BY BAYLY CROSSING, LLC DISMISSED. JUDGMENT OTHERWISE AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**