995 A.2d 1054

**John C. PRICE, et al.**

v.

**UPPER CHESAPEAKE HEALTH VENTURES, et al.**

No. 2261, Sept. Term, 2008.

Court of Special Appeals of Maryland.

May 27, 2010.

696

Stuart H. Levine of Baltimore, MD, for Appellant.

Joseph W. Hovermill and Dwight Stone (John C. Celeste and Dennis Robinson Jr., on the brief) of Baltimore, MD, for Appellee.

Panel: ZARNOCH, GRAEFF and KEHOE, JJ.

ZARNOCH, J.

In this appeal, we consider whether the Circuit Court for Harford County properly dismissed a purported derivative lawsuit filed on behalf of a Maryland limited liability company ("LLC") whose rights to do business in Maryland and to use its name were forfeited. On September 20, 2007, Dr. John C. Price and Dr. Alan H. Shikani, appellants, filed a complaint against fellow members of The Surgery Pavilion, LLC (sometimes referred to in this opinion as "the company") and members of the company's management committee, alleging that the company and appellants were harmed by the company's 2004 sale of substantially all of its assets. The complaint asserted one count of breach of fiduciary duty against all of the defendants, and four other counts against particular members of the management committee. The defendants, now appellees, were divided into two groups, each represented by separate counsel. Each group moved to dismiss the complaint

on various grounds. Although appellants originally asserted their claims individually and derivatively on behalf of the company, they later conceded that they could not sue in their individual capacity. Consequently, the circuit court was called upon to determine only whether to dismiss appellants' derivative lawsuit.

On October 29, 2008, the court dismissed the suit. On November 25, 2008, appellants timely noted an appeal. For reasons set forth below, we shall affirm.

## FACTS AND PROCEDURAL HISTORY

In January 2000, Upper Chesapeake Health Ventures, Inc. ("Upper Chesapeake") and a group of physicians, including appellants, formed The Surgery Pavilion, LLC for the purpose of operating an ambulatory surgical center in Harford County. Pursuant to the company's "Amended and Restated Operating Agreement," executed on December 31, 2002, the members appointed a management committee to govern the business and affairs of the company. At all relevant times, the members of the management committee were Upper Chesapeake, four individuals the complaint labeled as agents of Upper Chesapeake—Stephanie Dinsmore, Robin Luxon, Dr. Peggy Vaughan, and Russel Frank—and three physicians who were also members of the company, Drs. Thomas E. Jordan, David L. Zisow, and Jonathan Seidenberg. The other members of the company, who were not part of its management committee, were appellees Drs. C. Winfred Gehris, Robert Hoofnagle, Seidenberg Protzko Eye Associates, P.A.[1]; and non-parties Eric P. Suan and Northern Chesapeake Anesthesia Associates.

In September 2004, the management committee approved an agreement to sell substantially all of The Surgery Pavilion's assets to Upper Chesapeake. The agreement provided that, in consideration of the purchase, Upper Chesapeake would

---

1. Jonathan Seidenberg was president of Seidenberg Protzko Eye Associates and was on The Surgery Pavilion's management committee.

pay $936,000 cash, assume the company's $106,253 debts to third parties, discharge the company's $629,489 debt to Upper Chesapeake, and terminate Upper Chesapeake's preferred interest in the company, valued at $2.4 million. The management committee recommended that the company's members ratify the sale. On September 24, 2004, by a six to four vote, the sale was ratified.[2] Appellants, along with Dr. Suan and Northern Chesapeake Anesthesia Associates, did not consent to the sale.

On October 6, 2006, The Surgery Pavilion's "right to do business in Maryland and the right to the use of [its] name" were forfeited pursuant to Maryland law because the company failed to file a tangible personal property tax report for tax year 2005. *See* Maryland Code (1975, 2007 Repl. Vol.), § 4A-911(d) of the Corporations and Associations Article ("C & A").

On September 20, 2007, appellants filed a complaint in the circuit court against all members of the management committee and the members of the company who ratified the sale. The complaint alleged that the asset sale was "made below fair value."[3] It claimed that both the management committee and members of the company were not provided with, and failed to request, sufficient information from which they could prudently determine that the sale was in the best interests of the company and its members. It further alleged that Upper Chesapeake and "its agents" concealed certain facts from and falsely represented the company's value to the other members

---

**2.** The ratifying members executed a document entitled "Written Consent of the Members." Upper Chesapeake, Seidenberg Protzko Eye Associates, and Drs. Jordan, Zisow, Gehris, and Hoofnagle voted to approve the sale.

**3.** Specifically, the complaint alleged:

The sale price ... was determined, in part, based upon the profitability of the [c]ompany[, which] had, for many years prior to the sale ... been depressed due to improper allocation and billing to the [c]ompany of expenses that should have been allocated, billed, and/or paid for by Upper Chesapeake and/or its affiliates. The [m]anagement [c]ommittee failed in its responsibility to oversee operations of the [c]ompany and to assure itself that the [c]ompany only paid those expenses that it was responsible for.

of the company's management committee and the company's members.

The complaint consisted of five counts. Count one, breach of fiduciary duty, was asserted against all appellees and alleged that the members of the management committee and the members of the company who ratified the sale breached their fiduciary duties to the company and its members. Counts two through four—fraud, intentional misrepresentation, and intentional concealment, respectively—were asserted against Upper Chesapeake and its agents Luxon, Dinsmore, Vaughan, and Frank. Count five, unjust enrichment, was alleged only against Upper Chesapeake. Each count sought $5 million in compensatory damages, plus interest and costs. In addition, the breach of fiduciary duty claim sought a recision of the sale.

One group of defendants (the "Upper Chesapeake appellees") included Upper Chesapeake, which was named in all counts, and its "agents," Luxon, Dinsmore, Vaughan, and Frank, who were named in counts one through four. The other group was comprised of Drs. Jordan, Gehris, Zisow, Hoofnagle, Seidenberg, and Seidenberg Protzko Eye Associates (the "Physician appellees"), against whom only count one—breach of fiduciary duty—was alleged. Each group moved to dismiss, pursuant to Maryland Rule 2–322(b)(2), for failure to state a claim upon which relief could be granted.

Both sets of appellees argued that appellants could not maintain a derivative action on behalf of the company for the following reasons: (1) the company itself lacked power to sue since its rights to do business in Maryland and to use its name were forfeited [4]; (2) a derivative suit may only be filed by members of the company, and since the company was defunct,

---

**4.** Appellees and appellants both state that the company's articles of organization were forfeited for failure to file the tax reports. The circuit court and the parties at times refer to the articles as the company's charter. All parties state that the semantic difference between a corporation's charter and an LLC's articles of organization are not relevant to this case because the legal principles governing both are the same.

according to appellees, appellants were no longer members; (3) appellants did not satisfy the statutory prerequisite of a derivative suit that they adequately represent the interests of the company's members, *see* C & A § 4A–801(c); and (4) prior to filing suit, appellants failed to demand that the management committee bring the action, as required by statute, *see* C & A § 4A–801(b). All appellees further argued that the breach of fiduciary duty claim should be dismissed because Maryland does not recognize an independent cause of action for breach of fiduciary duty. Finally, all appellees argued that appellants could not sue in their individual capacity because they suffered no personal injury, an assertion appellants conceded.

Each set of appellees offered other arguments for dismissal. The Physician appellees asserted that even if breach of fiduciary duty—the one count filed against them—was a valid cause of action, it should be dismissed because, under the company's operating agreement, they could be held liable only for actions that were fraudulent or undertaken in bad faith or with gross negligence, and the complaint did not allege any of these elements with respect to them. They further contended that the members who were not on the management committee owed no fiduciary duties to appellants. Finally, they argued that, even if they owed a fiduciary duty to appellants, they justifiably relied on the representations of Upper Chesapeake and its agents and therefore breached no duty.

The Upper Chesapeake appellees argued that appellants failed to properly plead the elements of the fraud, intentional misrepresentation, and fraudulent concealment claims. They also contended that the unjust enrichment claim against Upper Chesapeake could not be maintained because (a) appellants personally did not confer a benefit on Upper Chesapeake; (b) any benefit conferred was governed by an express contract; and (c) the enrichment was not "unjust" because it was consistent with the company's operating agreement.

On October 29, 2008, the circuit court dismissed the suit. In an accompanying Memorandum Opinion, the court explained that it (1) dismissed the breach of fiduciary duty count be-

cause Maryland law does not recognize it as a cause of action; (2) dismissed all counts, holding that appellants could not bring a derivative suit because the company had "ceased to legally exist" and appellants were no longer members of the defunct company; and (3) dismissed the individual claims. Appellants now challenge the first two holdings. Appellees counter that the court's reasons for dismissal were correct and argue that there are also alternative grounds for dismissing the case.

## QUESTIONS PRESENTED

We rephrase and reorder appellants' questions as follows [5]:

I. Did the circuit court err when it held that appellants could not maintain a derivative suit on behalf of a limited liability company whose rights to do business in Maryland and use its name were forfeited?

II. Did the circuit court err when it dismissed the count of breach of fiduciary duty?

Answering the first question in the negative, we affirm the decision of the circuit court without reaching the second issue.

## DISCUSSION

### Standard of Review

We review *de novo* a trial court's grant of a motion to dismiss. *Gasper v. Ruffin Hotel Corp. of Md., Inc.,* 183 Md.App. 211, 226, 960 A.2d 1228 (2008). When reviewing the decision, we "assume the truth of all well-pleaded facts and allegations in the complaint, as well as all inferences that can be reasonably drawn from them," and we view "all well-

---

**5.** Appellants presented the following questions verbatim:

I. Did the Appellants properly plead a cause of action for breach of fiduciary duty when they identified the particular fiduciary relationship involved, identified how it was breached, and selected (and requested) appropriate remedies?

II. Did the forfeiture of the limited liability company's authority to act due to the failure of the management committee of the limited liability company to cause tangible personal property tax returns to be filed bar a derivative action that was otherwise timely filed?

pleaded facts and the inferences from those facts in a light most favorable to the plaintiff." *Lloyd v. General Motors Corp.*, 397 Md. 108, 121–22, 916 A.2d 257 (2007) (citation and quotations omitted). "Dismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff." *McNack v. State*, 398 Md. 378, 388, 920 A.2d 1097 (2007) (Citation and quotations omitted.).

## Status of an LLC Whose Rights Have Been Forfeited

Maryland Code (1985, 2007 Repl. Vol.), § 11–101(a)(1) of the Tax–Property Article ("TP") requires a limited liability company to file a tangible personal property report on or before April 15 of each year. C & A § 4A–911(d) provides that an LLC that fails to file the report forfeits its "right to do business in Maryland and the right to the use of the [LLC's] name ... without proceedings of any kind either at law or in equity." [6]

In the similar context of a corporation, C & A Section 3–503(d) provides that "the charters of ... corporations [that have failed to file an annual tax report] are repealed, annulled, and forfeited, and the powers conferred by law on the corporations are inoperative, null, and void." In *Kroop & Kurland, P.A. v. Lambros*, 118 Md.App. 651, 656, 703 A.2d 1287 (1998), we stated that, "[w]hen a corporation's charter is forfeited for non-payment of taxes or failure to file an annual report, the

---

**6.** More specifically, C & A § 4A–911(c) provides that, "[i]mmediately after September 30 of each year, the Department [of Assessments and Taxation ("Department")] shall certify a list of every Maryland limited liability company that has not filed an annual report with the Department as required by law...." Then, after the list is certified, "the Department shall issue a proclamation declaring that the right to do business in Maryland and the right to the use of the name for each limited liability company is forfeited as of the date of the proclamation, without proceedings of any kind either at law or in equity." C & A § 4A–911(d). Title 9A of C & A provides identical forfeiture rules for limited liability partnerships. C & A §§ 9A–1007 through 9A–1016. Title 10 does the same for limited partnerships. C & A §§ 10–209 through 10–218. Likewise, Title 12 imposes these requirements for business trusts. C & A §§ 12–801 through 12–810.

corporation is dissolved by operation of law and ceases to exist as a legal entity." In *Dual, Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 163, 857 A.2d 1095 (2004), the Court of Appeals similarly wrote that "[a] corporation, the charter for which is forfeit, is a legal non-entity; all powers granted to [the corporation] by law, including the power to sue or be sued, were extinguished generally as of and during the forfeiture period." *See also Hill Constr. v. Sunrise Beach, LLC*, 180 Md.App. 626, 952 A.2d 357 (2008) (holding that corporate action taken during a period when a corporation's charter is forfeited is null and void, and actions taken after its charter has been revived do not relate back to cure the loss of a right divested during the time the charter was forfeited). In *Bayly Crossing, LLC v. Consumer Protection Division*, 188 Md.App. 299, 318–19, 981 A.2d 777 (2009), *cert. granted*, 412 Md. 255, 987 A.2d 16 (2010), this Court applied the same analysis to dismiss the appeal of an LLC whose rights to do business and to use its name were forfeited for failure to file tax reports. However, upon close review of the text of the LLC statute and its legislative history, we find that tax-failure forfeiture by an LLC, while resulting in the loss of important rights, does not make the LLC a legal non-entity.[7]

■ In 1992, the General Assembly enacted the Limited Liability Company Act, C & A §§ 4A–101, *et seq.* *See* 1992 Md. Laws, Chapter 536. In 1995, the Legislature passed H.B. 871, a departmental bill proposed by the State Department of Assessments and Taxation, which added certain provisions to the Act to become effective on January 1, 1996, including C & A § 4A–911(d). The purpose of this bill was to "require[ ] that limited liability companies, limited liability partnerships and limited partnerships forfeit their right to do business in Maryland and the right to the use of their names if they have not paid specified taxes or filed an annual report with the state." Maryland General Assembly, Department of Fiscal Services, Fiscal Note for H.B. 871 (1995). Although C & A

---

7. Neither in this Court nor in the circuit court, did the parties note the difference in forfeiture rules for corporations and LLCs.

§ 3–503(d) provides, in the case of a corporation, that "the charters of . . . corporations [that failed to file an annual tax report] are repealed, annulled, and forfeited, and the powers conferred by law on the corporations are inoperative, null, and void," C & A § 4A–911(d) states only that an LLC that fails to file a tax report forfeits "the right to do business in Maryland and the right to the use of [its] name." The statute does not say that LLC articles of organization, like corporate charters,[8] are forfeited for failure to file tax reports or pay taxes. C & A § 4A–920 also indicates that the LLC does not become non-existent after it forfeits those rights, providing:

> The forfeiture of the right to do business in Maryland and the right to the use of the name of the limited liability company under this title does not impair the validity of a contract or act of the limited liability company entered into or done either before or after the forfeiture, or prevent the limited liability company from defending any action, suit, or proceedings in a court of this State.[9]

The legislative history files of H.B. 871 more clearly distinguish the legal consequences for a corporation and an LLC of a failure to pay or file taxes. The Floor Report of the House Economic Matters Committee on H.B. 871 states:

> HOUSE BILL 871 CONFORMS REQUIREMENTS THAT LIMITED LIABILITY COMPANIES, LIMITED LIABILITY PARTNERSHIPS, AND LIMITED PARTNERSHIPS MUST:
>
> 1. PAY THEIR TAXES;
> 2. PAY THEIR UNEMPLOYMENT CONTRIBUTIONS; AND
> 3. FILE THEIR PERSONAL PROPERTY RETURNS.
>
> THESE REQUIREMENTS CURRENTLY EXIST FOR GENERAL CORPORATIONS.
>
> IF THEY DO NOT COMPLY, THE BILL HAS FORFEITURE PROVISIONS THAT TAKE AWAY THE ENTITY'S ABILITY TO DO BUSINESS IN THE STATE.

---

**8.** *See* C & A §§ 1–101(e) and 4A–101(b).

**9.** *See* C & A §§ 9A–1016, 10–218, and 12–810, providing identical non-impairment provisions for limited liability partnerships, limited partnerships, and business trusts, respectively.

*(THE PENALTIES ARE NOT AS STRICT AS FOR A CORPORATION WHICH LOSES ITS CHARTER UNDER CURRENT LAW. FOR THESE ENTITIES, THEIR STATUS AS AN ENTITY REMAINS, THEY JUST CAN'T DO BUSINESS IN MARYLAND.)*

House Economic Matters Committee Floor Report on H.B. 871, at 2 (1995) (emphasis added).

Similarly, the Bill Analysis of the Senate Judicial Proceedings Committee provides:

> The penalty for noncompliance, i.e., the loss of the right to transact business and loss of the right to use the firm's name, is not as harsh as that for a corporation. A corporation that fails to comply with comparable requirements loses its charter.

Senate Judicial Proceedings Committee Report, Bill Analysis of H.B. 871, at 2 (1995).[10]

Therefore, in this case, because The Surgery Pavilion failed to file a personal property report for tax year 2005, the company's rights to do business in Maryland and use its name were forfeited on October 6, 2006.[11] However, the company

---

10. The Maryland statutes relating to forfeiture of an LLC for tax failures do not mirror either the Uniform Limited Liability Company Act of 1996 ("ULLCA") or the Revised Uniform Limited Liability Company Act of 2006 ("RULLCA"), which both provide that an LLC that fails to file or pay taxes may be "dissolved." However, those acts similarly provide that an LLC that fails to file or pay taxes does not become a non-entity. For example, Section 705(a) of the RULLCA provides that "[t]he [Secretary of State] may dissolve a limited liability company administratively" if it fails to pay or file taxes. Revised Unif. Ltd. Liab. Act § 705(a), 6B U.L.A. 510 (2008). Section 705(d), in turn, provides that "[an LLC] that has been administratively dissolved continues in existence but, subject to Section 706, may carry on only activities necessary to wind up its activities and liquidate its assets ... and to notify claimants...." *Id.* at 511; *see also* Unif. Ltd. Liab. Act §§ 809–12, 6B U.L.A. 628–31 (2008). *See also* Annot.: Application of statute denying access to courts or invalidating contracts where corporation fails to comply with regulatory statute as affected by compliance after commencement of action, 23 A.L.R.5th 744 (1994, 2009 Supp.).

11. Documentary evidence of the forfeiture of the company's right to do business was not submitted into evidence in the circuit court. However,

still existed as an entity. Consequently, we must determine whether the company possessed the power to file suit after it forfeited its right to do business in Maryland and use its name.

■ While providing that an LLC that failed to file or pay taxes forfeits its rights to do business in Maryland and use its name, C & A § 4A–911(d) does not expressly bar it from filing an action in court—except to the extent filing suit in the name of an LLC falls within the proscription against "doing business" and "using" the LLC name. Related statutory provisions concerning the forfeiture of an LLC's rights and its ability to regain those rights also do not specifically discuss the authority of a forfeited LLC to file an action in court. For example, C & A § 4A–919 provides that a person that transacts business in the name of a forfeited LLC knowing that its right to do business is forfeited is guilty of a misdemeanor and subject to a fine. Other sections provide that, after an LLC's authority to do business is forfeited for failure to pay or file taxes, the company may regain that authority by filing articles of reinstatement and paying and filing all taxes. C & A §§ 4A–915 and 4A–917.

■ Most directly addressing an LLC's powers after forfeiture is C & A § 4A–920, which is a non-impairment provision or "savings clause" preserving contract validity and litigative defense rights. This savings clause is unique to Maryland in that we have not discovered a similarly worded statute in any jurisdiction. It is also unique in its operation. On the one hand, the LLC's rights to do business and to use its name are forfeited. C & A § 4A–911. On the other hand, C & A § 4A–920 provides that a contract executed or an act performed by the LLC after the C & A § 4A–911 forfeiture is valid, and the

---

the parties do not contest this judicially noticeable fact, which is recorded on the Maryland Department of Assessments and Taxation website. The page showing the forfeiture is available at *http://sqrl.it/?onmxe*. The page showing the history of the company's filings and non-filings of personal property tax reports is available at *http://sqrl.it/?ynup3.*

LLC may defend an action in court. Nevertheless, with respect to court proceedings, the statute expressly provides that a forfeited LLC may only *defend* an action in court. The negative implication of such language, and the sweep of the "doing business"[12] and name "using" prohibition is that the company may not *file or maintain* a lawsuit after its rights have been forfeited. As a savings clause or proviso, such statutory language is usually strictly construed. 2A Norman J. Singer, et al., *Sutherland Statutory Construction* §§ 47.8 and 47.12 (7th ed. 2008). In addition, a conclusion that filing or maintaining a lawsuit is excluded from the savings clause is not only consistent with these rules of construction, it also harmonizes § 4A–911 with § 4A–920.[13]

Finally, we note that under Md. Rule 2–201, "[e]very [court] action shall be prosecuted in the name of the real party in interest[.]" An LLC whose right to use its name has been forfeited for failure to pay or file taxes cannot satisfy this rule and therefore cannot file an action in court. In *Bayly Crossing, LLC v. Consumer Protection Division*, 188 Md.App. at 304–05, 981 A.2d 777, the Consumer Protection Division of the Attorney General's Office brought a successful administrative action against Bayly Crossing, LLC and other parties that was heard by the Office of Administrative Hearings ("OAH"). After the LLC and its co-parties petitioned for judicial review of the OAH decision, the LLC's rights to do business and to use its name were forfeited. *Id.* at 318, 981 A.2d 777. Nevertheless, the circuit court reached the merits and affirmed the agency's decision. *Id.* at 315, 981 A.2d 777. After the LLC

---

12. *See Stone v. Interstate Natural Gas Co.*, 103 F.2d 544, 548 (5th Cir.1939), *aff'd.*, 308 U.S. 522, 60 S.Ct. 292, 84 L.Ed. 442 (1939) (holding that for purposes of franchise tax on corporations, "doing business" included the power to sue and be sued). *See also Colonial Pipeline Co. v. Traigle*, 421 U.S. 100, 110–12, 95 S.Ct. 1538, 44 L.Ed.2d 1 (1975).

13. Although it may be a common legislative drafting technique to include a savings clause at the conclusion of a subtitle, § 4A–920 is also a proviso and a key limitation with respect to § 4A–911. Perhaps, the former provision would not have been overlooked by the parties if a cross-reference to the section had been included in § 4A–911.

and other parties appealed to this Court, we dismissed the LLC as a party to the appeal, holding that it lacked standing to pursue the appeal because "the forfeiture of [its] corporate charter and its failure to file articles of revival render its appeal a nullity." *Id.* at 319, 981 A.2d 777.[14] We now hold that an LLC whose rights have been forfeited for tax failures still exists as an entity, but may only defend an action in court, not prosecute one. Nevertheless, because the taking of an appeal is comparable to the act of filing suit, the dismissal in *Bayly Crossing* of the LLC as a party to the appeal was not erroneous.

## Derivative Suit on Behalf of Company that Lacked Ability to Sue

 In *Werbowsky v. Collomb*, 362 Md. 581, 599, 766 A.2d 123 (2001) (quoting 13 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 5941.10 (1995 Rev. Vol.)) (quotations omitted), the Court of Appeals said that a derivative suit is a "suit by the corporation, asserted by the shareholder on its behalf, against those liable to it. The corporation is the real party in interest and the shareholder is only a nominal plaintiff. The substantive claim belongs to the corporation." In addition, ordinarily damages recovered in a derivative suit are paid to the corporation. *Paskowitz v. Wohlstadter*, 151 Md.App. 1, 9, 822 A.2d 1272 (2003). *See also* F. Hodge O'Neal and Robert B. Thompson, *Oppression of Minority Shareholders & LLC Members* § 7.7(Rev. 2d ed. 2008–09) at § 7.7. C & A § 4A–802 provides that a plaintiff in a derivative action on behalf of an LLC must be "a member at the time the action is brought." Here, the circuit court dismissed appellants' suit, holding that they could not sue on behalf of the company because it was a legal non-entity and lacked the power to sue, and because appellants were no longer members of the defunct company.

---

**14.** In any event, in *Bayly Crossing*, because other parties properly pursued the appeal, we reached the merits of the case. 188 Md.App. at 319–34, 981 A.2d 777.

Because of the savings provision of C & A § 4A–920, we disagree with the circuit court's conclusion that the company ceased to exist after the forfeiture. Likewise, the court's holding that appellants could not bring a derivative action on behalf of the company because they were no longer members is incorrect. Since the LLC continued to exist, albeit with some forfeited rights, its members continued to enjoy membership at the time the action was brought.

Nevertheless, since the LLC could not bring suit, it follows that members of the LLC could not file a derivative suit on its behalf or pursue an appeal of the dismissal of that action. This is so because any recovery in a derivative action could go only to the LLC, *see supra*, at p. 709, and because the LLC would still be the real party in interest in whose name the suit would be prosecuted, *supra*, at p. 708.[15] Thus, inclusion of such actions within C & A § 4A–911's stripping of the LLC's rights to do business and use its name is consistent with the purpose of the 1995 legislation to penalize tax failures by barring affirmative litigation benefitting the LLC.

Appellants however, point to caselaw in other states recognizing an equitable exception to statutes depriving a corporation of the power to sue by allowing shareholders to maintain a derivative action when the directors of the corporation caused the company's loss of litigative authority, and they ask us to apply this exception here. Because there are no LLC or Maryland cases on point, we will examine appellants' authorities, focusing on the reported out-of-state cases they cite, as well as other potentially relevant out-of-state cases.

In *Independent Investor Protective League v. Time, Inc.*, 50 N.Y.2d 259, 428 N.Y.S.2d 671, 406 N.E.2d 486, 488–89 (1980), the Court of Appeals of New York held that a New York statute authorized a shareholder of a dissolved corporation to bring a derivative suit despite not owning shares in the

---

15. In addition, a key element of a derivative action against a corporation or LLC is the general requirement that demand be made on the entity to bring suit itself. *Bender v. Schwartz*, 172 Md.App. 648, 666, 917 A.2d 142 (2007).

corporation after its dissolution. The relevant statute provided that "[t]he dissolution of a corporation shall not affect any remedy available to ... [its] shareholders for any right or claim existing ... before such dissolution." *Id.* (quotations and citation omitted). *See also Snyder v. Pleasant Valley Finishing Co.*, 756 F.Supp. 725, 730 (S.D.N.Y.1990) (applying the *Indep. Investor Protective League* holding).

Similarly, in *Striker v. Chesler*, 217 A.2d 31, 35 (Del.Ch. 1966), the Delaware Court of Chancery held that a shareholder could maintain a derivative suit on behalf of a dissolved Michigan corporation based on a Michigan statute that provided that dissolved corporations continue for three years for the purposes of prosecuting or defending suits.

In *Castner v. First National Bank of Anchorage*, 278 F.2d 376 (9th Cir.1960), the United States Court of Appeals for the Ninth Circuit allowed a shareholder to maintain a derivative suit on behalf of an Alaskan corporation that was barred by Alaska statute from filing suit because of its failure to pay corporate taxes or file annual reports. The relevant statute provided that "no corporation ... shall be permitted to commence or maintain any suit, action or proceeding in any court in this Territory without alleging and proving that it has paid its annual corporation tax last due and has filed its annual report for the last calendar year." *Id.* at 381. The court held:

> Under such statutes, courts uniformly hold that striking the corporate name for failure to pay corporation fees and taxes merely places the corporation in a state of "suspended animation," but does not effect a dissolution of the corporation.

* * *

[W]e are presented with a situation where a shareholder is attempting to maintain a suit on behalf of a corporation where the latter, though still existing as a corporation, is within the letter of a positive statute denying corporations the right to use the courts because of its failure to comply with statutes requiring the payment of annual corporate taxes and the filing of certain required statements.

The evident purpose of these statutes is to penalize the corporation if it fails to comply with the revenue and regulatory acts, or to put the matter in another way, to coerce compliance by threat of this penalty should the corporation neglect or fail to obey the law.

But if these statutes were construed to prevent any suits at all then those in control could with impunity deliberately disregard their fiduciary duties owed to the corporation and to the stockholders. *Directors in charge of the management and property of the corporation could* intentionally dissipate, misuse and improperly dispose of the property under their control in flagrant disregard of the obligations owing to the corporation and *avoid all liability* to the corporation and those beneficiary [*sic*] interested therein *by the simple expedient of intentionally failing to comply with such laws;* no remedy would be available to the injured corporation and those beneficially interested against the faithless fiduciaries. In short, it would penalize certain stockholders if the act (statutes) be so construed as to enable those in charge [ . . . ] to defraud them. Because such statutes should not be allowed to perpetuate or encourage frauds and mismanagement, (courts) of equity have found little difficulty in affording stockholders of a corporation a remedy where it is shown that the directors, who are charged with the exercise of the utmost good faith in dealing with the corporate property as trustees for the stockholders have breached such trust and injury to the corporate property and the stockholders has resulted therefrom.

Thus, where the gist of the action brought by a shareholder on behalf of the corporation is that of mismanagement of directors, an equitable exception to the usual bar of such statutes is recognized and the action may be prosecuted notwithstanding the default of the corporation.

*Id.* at 382–83 (Citations and quotations omitted.) (Emphasis added.)

The court then vacated the trial court's summary judgment against the shareholder because:

The allegation in the complaint and the statements found in the affidavit, when taken together and viewed in the light most favorable to appellant, are at least suggestive that the defendant-directors cooperated with the mortgagees to effect a fraudulent sale of the property of the corporation and *deliberately allowed the corporation to become defunct in order to prevent it and the stockholders from bringing any action to secure redress from them and others involved.*

These facts, if such they are, reveal the existence of a cause of action of the type recognized by equity as an exception to the operation of the statutes prohibiting suit by or on behalf of a delinquent corporation.

*Id.* at 384. (Emphasis added.)

The *Castner* Court cited *Reed v. Norman,* 48 Cal.2d 338, 309 P.2d 809 (1957). In *Reed,* a shareholder filed a derivative suit, alleging dissipation of the corporate assets by the directors and officers. *Id.* at 810. During the course of the suit, the corporation's right to engage in litigation was suspended for failure to pay state taxes. *Id.* at 811. The defendants moved to dismiss, arguing that the shareholder could not maintain a suit on behalf of a corporation that was statutorily barred from doing so. The Supreme Court of California held, *id.* at 812:

[I]t is true that under the corporation law the corporation may not prosecute or defend an action, nor appeal from an adverse judgment in an action while its corporate rights are suspended for failure to pay taxes, and, generally, in a derivative action the wrong is "to the corporation as such and not the stockholders individually, hence a bar to an action by the stockholders for the corporation." But here, in a stockholders' derivative action, the corporation is forced to be a party because any recovery goes through the corporate channel and thus enhances the stockholders' interest therein. The corporation is not attempting to exercise its rights as a corporation.[16] It is being used as a

---

16. This statement that, in a derivative action, "the corporation is not attempting to exercise its rights" seems to be at odds with the Court of

necessary channel by the shareholders. The books and records of the corporation are in the hands of the mismanaging officers according to plaintiff's complaints and thus the shareholders are not in a position to make a return or compute the franchise tax. In such a case it is not equitable to permit [the tax code] to stand as a shield for protecting allegedly dishonest corporate officials. . . . It has been recognized that the court may dispense with the presence of a defunct corporation in a derivative action, if the circumstances warrant such exercise of its equitable powers.

In the similar context of a corporation that has merged, several courts have held that a shareholder who owned stock in a defunct target corporation may still have standing to bring a derivative suit on behalf of that company. In *Miller v. Steinbach*, 268 F.Supp. 255, 267 (S.D.N.Y.1967) (citation omitted), the court wrote:

It would appear to me that a grossly inequitable decision would be reached if I were to hold that a merged corporation and/or its shareholders are barred from suing where the very merger itself took place because of the allegedly wrongful activities of the directors of the old corporation and the management of the surviving corporation among others. To hold that the surviving corporation inherits a derivative right of action where said corporation has wrongfully taken part in the very acts complained of would be to reach an incongruous and highly inequitable result.

*See also Keyser v. Commonwealth Nat'l Fin. Corp.*, 120 F.R.D. 489, 493 (M.D.Pa.1988) (quoting and applying the *Miller* rationale).

The Supreme Court of Delaware has also recognized an exception to the requirement that a shareholder continuously own shares in the corporation in order to maintain a derivative action when the plaintiff lost stock in the corporation as a result of a merger, and the merger itself is the subject of a

Appeals' statement in *Werbowsky v. Collomb,* 362 Md. 581, 599, 766 A.2d 123 (2001), that the "corporation is the real party in interest" and "[t]he substantive claim belongs to the corporation."

claim of fraud perpetrated merely to deprive shareholders of the standing to bring a derivative action. *Feldman v. Cutaia,* 951 A.2d 727, 731 n. 20 (Del.2008); *Lewis v. Ward,* 852 A.2d 896, 899 (Del.2004); *Lewis v. Anderson,* 477 A.2d 1040, 1046 n. 10 (Del.1984). *See also Grosset v. Wenaas,* 42 Cal.4th 1100, 72 Cal.Rptr.3d 129, 175 P.3d 1184, 1197 (2008) (agreeing with the Supreme Court of Delaware that an exception to the continuous ownership requirement may be warranted if the merger itself is used to wrongfully deprive the plaintiff of standing to sue); *Zauber v. Murray Savings Assoc.,* 591 S.W.2d 932, 937–38 (Tex.Civ.App.1979) ("If, [rather than voluntarily disposing of his or her shares], a shareholder's status is involuntarily destroyed, a court of equity must determine whether the status was destroyed without a valid business purpose; for example, was the action taken merely to defeat the plaintiff's standing to maintain the suit?").

Focusing on these authorities, we note that several of the above cases relied on statutes in their respective jurisdictions. Indeed, *Striker,* 217 A.2d at 36, did not create an exception to a statute prohibiting a corporation from filing suit after forfeiture of its charter, but applied a law that expressly allowed a corporation to sue or be sued within three years of its dissolution. *Independent Investor Protective League,* 428 N.Y.S.2d 671, 406 N.E.2d at 488–89, as well, relied on an express New York statute allowing a shareholder to sue after the corporation dissolved.

█ In fact, at least with respect to a corporation, Maryland statute, as well, permits certain parties to initiate suits on behalf of a corporation whose charter was forfeited for tax failures. C & A Section 3–515(a) provides that, "[w]hen the charter of a Maryland corporation has been forfeited, until a court appoints a receiver, the directors of the corporation become the trustees of its assets for purposes of liquidation." Among other powers, "[t]he director-trustees may ... [s]ue or be sued in their own names as trustees or in the name of the corporation; and [d]o all other acts consistent with law and the charter of the corporation necessary or proper to liquidate

the corporation and wind up its affairs." C & A § 3–515(c)(3) and (4). Thus, with respect to matters relating to the liquidation and winding up of the corporation, Maryland law authorizes a director-trustee of a corporation whose charter has been forfeited to sue or be sued in his own name or in the name of corporation. *See, e.g., Hill Constr.*, 180 Md.App. at 635–36, 952 A.2d 357; *Mintec Corp. v. Miton*, 392 B.R. 180, 185–89 (D.Md.2008). However, there is no Maryland statute that allows a shareholder to sue on behalf of a corporation whose charter is forfeited. Likewise, there is no Maryland statute that authorizes an LLC member to file a derivative suit on behalf of an LLC whose rights have been forfeited. Therefore, out-of-state cases relying on express statutory authority to preserve the power to litigate, do not advance appellants' cause.

 *Castner* and other cases relying on equitable principles are more helpful. The *Castner* Court was concerned that corporate directors were trying to avoid liability by intentionally failing to comply with tax and reporting provisions.[17] 278 F.2d at 383–84. In *Reed*, the directors of a corporation failed to pay corporate taxes after a shareholder filed a derivative suit. 309 P.2d at 813. The court held that the suspension of the corporation's rights due to its directors' failure to pay taxes did not require dismissal of the previously filed derivative suit because "[t]he books and records of the corporation are in the hands of the mismanaging officers according to plaintiff's complaints ... [and] it is not equitable to permit [the tax code] to stand as a shield for protecting allegedly

---

**17.** One component of the court's analysis in *Castner* is at odds with established Maryland caselaw. The Alaskan statute at issue in *Castner*, which prohibited the filing of a suit by a corporation that failed to pay or file taxes, "merely places the corporation in a state of 'suspended animation,' but does not effect a dissolution of the corporation." *Castner v. First Nat'l Bank of Anchorage*, 278 F.2d 376, 382–83 (9th Cir.1960). In Maryland, however, a corporation whose charter is forfeited because of failure to file a tax report is not in "suspended animation"; rather, it "is a legal non-entity." *Dual, Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 163, 857 A.2d 1095 (2004); *Hill Constr. v. Sunrise Beach, LLC*, 180 Md.App. 626, 638, 952 A.2d 357 (2008).

dishonest corporate officials." *Id.* at 812. The *Reed* Court's articulation of the judicial exception is broader than in *Castner* because *Reed* did not include any language limiting its exception to cases where there is evidence that the corporate directors failed to file or pay taxes in order to avoid liability.[18] However, the court applied the exception in a case where the directors failed to pay taxes during the course of a derivative suit filed by a shareholder and then moved to dismiss the suit. Moreover, the court also relied on an alternative ground, holding that even if the shareholder could not maintain the action because of the suspension, he should be given an opportunity to pay the taxes and reinstate the corporation, which was permitted by a California statute. *Id.* at 813.

In *Miller*, 268 F.Supp. at 267, the court wrote that "a grossly inequitable decision would be reached if . . . a merged corporation and/or its shareholders are barred from suing where the very merger itself took place because of the allegedly wrongful activities of the directors of the old corporation and the management of the surviving corporation among others." The Supreme Court of Delaware similarly limited its exception to cases where the merger itself is the subject of a claim of fraud perpetrated merely to deprive shareholders the standing to bring a derivative action. *Feldman,* 951 A.2d at 731 n. 20; *Ward,* 852 A.2d at 899; *Anderson,* 477 A.2d at 1046 n. 10.

Here, appellants did not allege any facts in their complaint that suggest that the management committee of the company deliberately failed to file tax reports, causing the forfeiture of the company's rights, in order to defeat their standing and to prevent liability. On this point, the circuit court said:

> There have been no facts presented in this case to show that managing members of the Company failed to file their

---

18. The breadth of *Reed* seems to differ from older Maryland caselaw that indicates that "equity courts should not be used to circumvent the forfeiture statutes." James J. Hanks, Jr. *Maryland Corporate Law* at § 12.2 (2010) (citing *Atlantic Mill & Lumber Realty Co. v. Keefer,* 179 Md. 496, 501, 20 A.2d 178 (1941)).

property return in order to have the company forfeited simply to bar any future derivative actions. The assets were sold and the managing members allowed for the natural death of the Company.[19] There is no assertion by [appellants] that the decision to allow the charter to be forfeited was intended to cover any wrongdoing or done as a result of any dispute that existed between the principals.

As stated above, instead of affirmatively terminating the legal life of the Company as is permitted under [Title 3 of the C & A], the managing members decided to simply not file the property returns and let the company expire naturally as a matter of law in 2006. This action clearly demonstrates that they were in no rush to terminate the legal rights of the Company. Had this been the case, [appellees] would have taken steps to terminate the charter immediately after the assets were sold. Instead the Company continued to live as a legal entity longer after the sale than any of its principals probably anticipated. At any time during the two-year period between the sale to Upper Chesapeake and the forfeiture[, appellants] could have sued without concern about this issue because the Company was fully in existence and they have provided no explanation as to why they failed to do so.

We find no error in the circuit court's decision, and, in fact, appellants do not challenge this on appeal. Rather, they argue that they should be allowed to maintain their derivative action even if the LLC's forfeiture was not the result of a deliberate attempt to avoid a lawsuit. We disagree. Therefore, although there may exist appropriate circumstances to apply an equitable exception allowing a shareholder or member to maintain a derivative suit against a company's directors or members on behalf of a company that itself could not sue, the facts of this case do not warrant such an exception. For

---

19. As we have explained, the company did not "die" and its articles of organization were not forfeited after it failed to file tax reports. Nevertheless, we agree with the circuit court's conclusion that there were no allegations that the management committee deliberately failed to file reports in order to prevent derivative suits or otherwise avoid liability.

this reason, we affirm the circuit court's dismissal. Since we conclude that all counts of the complaint were properly dismissed because appellants could not maintain a derivative action, we need not address appellants' argument regarding the dismissal of the breach of fiduciary count. Likewise, we need not consider any of the additional arguments raised by appellees.

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**