REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2270

September Term, 2013

A GUY NAMED MOE, LLC,
T/A MOE'S SOUTHWEST GRILL

v.

CHIPOTLE MEXICAN GRILL
OF COLORADO, LLC ET AL.

Krauser, C.J.,
Zarnoch,
Davis, Arrie W.
 (Retired, Specially Assigned),

JJ.

Opinion by Krauser, C.J.

Filed: May 29, 2015

The parties to this appeal are two "foreign limited liability companies":[1] A Guy Named Moe, LLC ("Moe's"), appellant, and Chipotle Mexican Grill of Colorado, LLC ("Chipotle"), appellee.[2] Both companies operate a chain of restaurants, which are respectively known as "Moe's Southwest Grill" and "Chipotle Mexican Grill." The dispute between the parties, which underlies this appeal, began in 2012, when Chipotle[3] applied for a "special exception" for 36 Market Space in Annapolis, Maryland, where it intended to open one of its restaurants. That location is just a little more than 400 feet from the Moe's Southwest Grill at 122 Dock Street, a restaurant which affords a similar fare, at similar prices.

The City of Annapolis's Department of Planning and Zoning subsequently recommended that the Board of Appeals of the City of Annapolis approve Chipotle's application. At the proceedings before the Board that ensued, Moe's opposed that recommendation but to no avail. The Board unanimously approved Chipotle's request. When Moe's thereafter filed a petition requesting that the Circuit Court for Anne Arundel County review the Board's decision, that court responded by dismissing Moe's petition, reasoning that, because Moe's, as a lessee of the Dock Street property, did not pay any taxes

---

[1] "'Foreign limited liability company' means a limited liability company formed under the laws of a state other than this State." Md. Code (1975, 2014 Repl. Vol.), §4A-101(j) of the Corporations and Associations Article ("C.A.").

[2] Although the City of Annapolis Department of Planning and Zoning was also a named appellee in this appeal, it filed no brief in this matter.

[3] In addition to Chipotle, the sub-landlord, International Leasing Association, LLC, and the owners of the property at 36 Market Space, Herman Gritz and Jack Gritz, were listed as applicants on Chipotle's special exception application.

on that property, it lacked standing to challenge the Board's decision. From that ruling, Moe's noted this appeal, contending that, while it was not a "taxpayer," under Maryland Code (2012), § 4-401(a) of the Land Use Article ("L.U."), it still had standing to file such an action as "a person aggrieved" by the Board's decision under the very same statutory provision.

Because we hold that Moe's did not have standing to file such a petition, though for an entirely different reason from the one relied upon by the court below in rendering its ruling, we shall affirm.

# I.

Moe's, a Virginia LLC, leases 122 Dock Street in Annapolis and has operated a restaurant at that location since 2006. On August 27, 2012, Chipotle, a competitor of Moe's, filed an application for a special exception with the City's Department of Planning and Zoning, so that it could open a "standard restaurant"[4] at 36 Market Space in downtown

---

[4]To be a "standard restaurant," according to the Staff Report, issued by the City of Annapolis Department of Planning and Zoning, a business establishment must meet the following criteria:
1.      The establishment's principal business will be the sale of foods and beverages to customers in a ready-to-consume state.
2.      Carry-out foods or beverages will constitute not more than 10% of the business.
3.      Service of food is provided by a cafeteria-type operation, where foods or beverages are served on nondisposable plates or containers and nondisposable eating utensils are provided.
4.      Revenues from alcohol sales shall not exceed 50% of total revenue.

Annapolis, a location just four to five hundred feet[5] from one of Moe's restaurants.

Chipotle's application sought permission to modify the use of the Market Space property, which had been previously occupied by a coffeehouse with a bookstore. Among other things, it requested the right to increase the interior seating for customers, to "remove the bookstore component from the current restaurant license," and to maintain its daily hours of operation from 11 a.m. to midnight.

On September 25, 2012, the City's zoning department issued a staff report recommending approval of Chipotle's application. After that report was transmitted to the Board of Appeals of the City of Annapolis, a public hearing was subsequently held by the Board on Chipotle's application. Following that hearing, the Board voted to approve Chipotle's application for a special exception and later issued a written opinion confirming and explaining its decision.

Contesting that decision, Moe's filed a petition for judicial review in the Anne Arundel County circuit court. Although the filing fell within the 30-day period for filing such a petition under Rule 7-203(a),[6] it notably occurred several years after Moe's right to

---

[5]At the hearing before the circuit court, Moe's attorney maintained that the distance between the two restaurants would be 425 feet, while Chipotle contended that that distance would be 500 feet.

[6]The relevant portion of Maryland Rule 7-203(a) provides:

> (a) **Generally.** Except as otherwise provided in this Rule or by statute, a petition for judicial review shall be filed within 30 days after the latest of:

(continued...)

3

do business in Maryland had been forfeited, a right that was not restored until September 24, 2013, over four months after the 30-day filing period for such petitions had lapsed. That is to say, Moe's had lost its right to do business in Maryland when it filed its otherwise timely petition for judicial review. What is more, notwithstanding the forfeiture of its right to do business in this State, Moe's continued to do business in Maryland without pause or interruption and, in fact, was conducting business in Maryland on the very day that it invoked the assistance of the Maryland judiciary by filing the petition at issue.

Chipotle responded to that petition by filing a motion to dismiss in the circuit court, contending that, because Moe's had been stripped of its right to do business in Maryland and nonetheless continued to do business in this State, it lacked standing to seek judicial review. Nor could it file such a petition, Chipotle added, as either a "person[7] aggrieved by the decision or action" of the Board, under L.U. § 4-401(a)(1), or as a "taxpayer," under L.U. § 4-401(a)(2), as it was neither.

---

[6](...continued)
  (1)   the date of the order or action of which review is sought:
  (2)   the date the administrative agency sent notice of the order or action to the petitioner, if notice was required by law to be sent to the petitioner; or
  (3)   the date the petitioner received notice of the agency's order or action, if notice was required by law to be received by the petitioner.

[7]In the Land Use Article of the Maryland Code, "'Person' includes an individual and a domestic or foreign corporation, business trust, statutory trust, estate, trust, partnership, limited partnership, *limited liability company*, association, two or more persons having a joint or common interest, or any other legal or commercial entity." L.U. § 1-101(k) (emphasis added).

On December 4, 2013, the circuit court granted Chipotle's motion to dismiss "with prejudice," stating that Moe's "does not have standing" because it "is not a taxpayer within the meaning of the statute and therefore on that basis alone the Court must grant the motion." The court went on to state that, because it was granting Chipotle's motion to dismiss on Moe's lack of taxpayer status, it did not "have to get into" other issues, though it appeared to do precisely that when it expressed the belief, in ruling on that motion, that Moe's opposition to Chipotle's request for a special exception was "a matter of competition," which, if true, would have denied Moe's "aggrieved" party status.

## II.

The parties agree, and correctly so, that Moe's was not "a taxpayer" under L.U. § 4-401(a)(2). To achieve that status, a petitioner must be a "person" or "entity" that "pays real property taxes to the local jurisdiction whose zoning action is being challenged on appeal," *Superior Outdoor Signs, Inc. v. Eller Media Co.*, 150 Md. App. 479, 507 (2003),[8] which Moe's does not. Moe's contends, however, that not only did the circuit court err in dismissing its petition on those grounds, but it also erred in failing to consider whether it, Moe's, qualified to file the petition in question, on alternative statutory grounds, namely, as

---

[8]In *Superior Outdoor Signs, Inc. v. Eller Media Co.*, 150 Md. App. 479, 507 (2003), we declared that "the phrase 'any taxpayer' . . . means any person, including an entity, who pays real property taxes to the local jurisdiction whose zoning action is being challenged on appeal." In reaching that conclusion, we interpreted the predecessor to L.U. §4-401(a), which was subsequently codified in the Land Use Article without substantive change.

5

a "person aggrieved" by the Board's decision under L.U. § 4-401(a). That provision provides that, in addition to a "taxpayer," a "person," under L.U. § 1-101(k), "may file a request for judicial review of a decision of a board of appeals . . . by the circuit court" when that "person" is "a person aggrieved by the decision or action."[9] Moe's therefore urges this Court to remand this case to the circuit court so that it may address that issue.

But, here, Moe's is getting a little ahead of itself because the threshold issue of this appeal is not whether Moe's was a "taxpayer" or "a person aggrieved," or neither one at all, but whether the petition at issue was void *ab initio*, given that, at the time that it was filed, Moe's had lost its right to do business in Maryland and was nonetheless continuing to do business in Maryland. Although the circuit court chose not to address and resolve this pivotal issue, we may do so, as this Court may "affirm a circuit court's judgment on any ground adequately shown by the record, even one upon which the circuit court has not relied or one that the parties have not raised." *Puppolo v. Adventist Healthcare, Inc.*, 215 Md. App. 517, 530 (2013) (quoting *Barnes v. Greater Baltimore Med. Ctr., Inc.*, 210 Md. App. 457, 471 (2013)).

---

[9]Specifically, the relevant portion of L.U. § 4-401 provides:

 (a) *Who may file.*—Any of the following persons may file a request for judicial review of a decision of a board of appeals or a zoning action of a legislative body by the circuit court of the county:

  (1) a person aggrieved by the decision or action;
  (2) a taxpayer; or
  (3) an officer or unit of the local jurisdiction.

**III.**

Although it acknowledged that it did file its petition for judicial review after its right to do business in Maryland had been forfeited and while it was nonetheless continuing to conduct business in this State, Moe's asserts that it could nonetheless legally maintain a suit because it did file its petition for judicial review within the 30 days of the Board's decision as required by Rule 7-203(a) and because that petition was revived when, several years later, its right to do business in Maryland was restored. It then asserts, "by the plain language of the statute [Md. Code (1975, 2014 Repl. Vol.), § 4A-1007(a) of the Corporations and Associations Article ("C.A.")], the failure of a foreign limited liability company to be licensed and registered to do business in Maryland will at most make the foreign company's suit subject to dismissal" and that dismissal should only occur "if it fails, as specified by the statute, to cure the infirmity and pay any penalty."

While a foreign LLC may have standing as a "taxpayer" or a "person aggrieved" under L.U. § 4-401(a) to petition the circuit court for judicial review, it loses that standing if it continues to do business in Maryland after its right to do business here has been forfeited. We reach that conclusion based upon the plain language of C.A. § 4A-1002(a), C.A. § 4A-1013, and C.A. § 4A-1007(a). C.A. § 4A-1002(a) states that "[b]efore doing any interstate, intrastate, or foreign business in this State, a foreign limited liability company shall register with the [State Department of Assessment and Taxation ("SDAT")]." C.A. § 4A-1013 then warns that the SDAT may "forfeit the right of any foreign limited liability company to do

7

business in this State" if that company "fails to file any report" with the SDAT or "fails to pay any late fee" within the statutorily prescribed period for doing so. And, then, of particular significance to the issue before us, C.A. § 4A-1007(a) provides that, "[i]f a foreign limited liability company *is doing* or has done *any intrastate, interstate, or foreign business in this State* without complying with the requirements of this subtitle, the foreign limited liability company . . . *may not maintain suit* in any court of this State," unless it "shows to the satisfaction of the court" that it has satisfied certain obligations or that it is no longer doing business in Maryland. (Emphasis added.) A petition for judicial review of an administrative decision filed in the circuit court is a "suit," as it is an "original action." *Kim v. Comptroller of the Treasury*, 350 Md. 527, 534 (1998); *see also* Black's Law Dictionary 1663 (10th ed. 2014) (defining "suit" as "[a]ny proceeding by a party or parties against another in a court of law").

Moe's had its right to do business forfeited by the SDAT on November 16, 2006.[10] That forfeiture occurred, as Moe's counsel explained to the circuit court, because Moe's "hadn't filed the proper registration and the fees and what have you," in violation of C.A. § 4A-1002 and 4A-1013,[11] until that right was reinstated nearly seven years later, on

---

[10]Moe's also failed to have an active resident agent, as required by C.A. § 4A-210(a)(2).

[11]The record does not provide the specific reason why Moe's had its right to do business in Maryland forfeited.

8

September 24, 2013.[12] Moe's nonetheless continued to do business in Maryland—that is, to operate its restaurant—during the period of forfeiture. And, during that period, it not only opposed Chipotle's special-exception application before the Board but then filed the petition at issue, in the circuit court, contesting the Board's decision to grant Moe's a special exception.

Specifically, C.A. § 4A-1007(a) provides that a foreign LLC, which is doing or has done business in Maryland in violation of the subtitle governing foreign LLCs, may not "maintain suit" in any Maryland court unless:

(1) The foreign limited liability company or the person claiming under it has paid the penalty [for doing business in Maryland without registering]; and

(2)(i) The foreign limited liability company or a successor to it has complied with the requirements of this subtitle; or

(ii) The foreign limited liability company and any foreign limited liability company successor to it are no longer doing intrastate, interstate, or foreign business in this State.

Moe's is correct that the plain language of the statute allows a foreign LLC to "cure the infirmity" of forfeiture so that it may "maintain suit," as the statute provides that a foreign LLC could pay the required penalty and either show the court that it has complied with the

_____

[12]In an affidavit of Saleh Mohamadi, Moe's "business manager," submitted to the circuit court as an exhibit attached to Moe's opposition to Chipotle's motion to dismiss, Mohamadi asserted that, after learning in February 2013 that Moe's right to do business was forfeited, he filed articles of revival and an accompanying payment with the SDAT. When Mohamadi learned, in September 2013, that the SDAT had rejected those articles, Moe's, on September 24, 2013, "paid the required fees and obtained a Certificate of Good Standing to transact business in the State of Maryland."

9

subtitle governing foreign LLCs or that it had stopped doing business in Maryland. But Moe's is not correct that, once a foreign LLC has satisfied the court of its right to maintain suit, it may then rely on a petition it had filed with the court when it had no such right to do so, if that petition for judicial review was filed within the required 30-day time limit. Indeed, Moe's cites no authority for that proposition, and neither the plain language of C.A. § 4A-1007(a) nor its legislative history support such a conjecture.

Although there are no Maryland appellate decisions that address the issue of a foreign LLC's standing to bring or maintain a legal action under the circumstances presented by this case, a relatively recent Maryland appellate decision, *Price v. Upper Chesapeake Health Ventures*, 192 Md. App. 695 (2010), has addressed this issue in the context of a domestic LLC. There, this Court held that a domestic LLC may not file or maintain a lawsuit after its right to do business has been forfeited. *Id.* at 708–09. In *Price*, members of a domestic LLC filed a derivative suit against members of the LLC's management committee, who had decided to sell substantially all of its assets, as well as against those members of the LLC who had ratified that sale. But the suit was brought nearly a year after the domestic LLC's right to do business had been forfeited.

While noting that C.A. § 4A-920 does provide that "[t]he forfeiture of the right to do business in Maryland and the right to the use of the name of the limited liability company does not . . . prevent the limited liability company from *defending* any action, suit, or proceeding in a court of this State," (emphasis added), we stressed that "[t]he negative implication of such

10

language, and the sweep of the 'doing business' and name 'using' prohibition is that the company may not *file or maintain* a lawsuit after its rights have been forfeited. " *Id.* at 708 (footnote omitted) (emphasis in original).

That reasoning and, more specifically, that "negative implication" is applicable to foreign LLCs, like Moe's, as well. Like C.A. § 4A-920, the statute governing domestic LLCs, C.A. § 4A-1007(b), the statute governing foreign LLCs, provides: "The failure of a foreign limited liability company to register in this State does not impair the validity of a contract or act of the foreign limited liability company or prevent the foreign limited liability company from *defending* any action, suit, or proceeding in a court of this State." (Emphasis added.) Then, significantly, the foreign LLC subtitle goes one step further and includes a statutory provision, C.A. § 4A-1007(a), that expressly bars a foreign LLC from maintaining suit when it is doing business in Maryland without a right to do so. Thus the reasoning in *Price* clearly applies to the instant case: If a domestic LLC cannot, by "negative implication," file or maintain suit, then surely a foreign LLC containing an express bar to such legal action cannot file or maintain suit, or its legal equivalent, a petition for judicial review.

Further support for this proposition is to be found in cases involving the legal effects of the loss of a corporate charter, by forfeiture, upon a corporation. Although there are, to be sure, significant differences between an LLC and a corporation, an LLC, like a corporation, is a separate and distinct legal entity and possesses some of the features of a corporation—like protection against personal liability. *Robinson v. Glynn*, 349 F.3d 166, 174 (4th Cir. 2003)

11

(observing that LLCs, like corporations, provide protection against personal liability). In any event, we cannot conceive of any reason to treat an LLC differently from a corporation with respect to the right to file or maintain a suit, when its respective right to do business has been forfeited. In fact, the two entities are enough alike, for the purposes of this issue, that one serves as an appropriate analogue for the other. We therefore turn to cases involving corporations that largely raise the same issue that is before us.

We begin with *Dual, Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 163 (2004), a case involving a dispute among corporations, not LLCs as here. Dual, Inc. sued Lockheed Martin Corporation and two of its subsidiaries for allegedly committing various torts relating to the termination of two contracts. *Id.* at 157. At the time Dual filed its complaint, its charter had been forfeited. *Id.* A year later and after reviving its charter, Dual filed an amended complaint modifying its previously pleaded counts and adding additional ones. *Id.* Lockheed filed, in response, a motion to dismiss Dual's amended complaint, asserting, among other things, that the original complaint was a nullity because Dual's charter was forfeited at the time the complaint was filed and that the amended complaint was time barred under the applicable statute of limitations. *Id.*

The Court of Appeals agreed with Lockheed and found that Dual's initial complaint was void *ab initio*. Citing C.A. § 2-103(2), which bestows upon corporations the power to sue, and C.A. § 3-503(d), which provides that, when the SDAT has forfeited a corporation's charter for failure to file an annual report or nonpayment of taxes, "the powers conferred by

law" on that corporation "are inoperative, null, and void,"[13] it held that "the initial complaint . . . was a nullity and therefore ineffective for the purpose of tolling the running of the statute of limitations." *Id.* at 162–63. "A corporation, the charter for which is forfeit is a legal non-entity," explained the Court of Appeals. *Id.* at 163. Therefore, "all powers granted to Dual, Inc. by law, including the power to sue or be sued, were extinguished generally as of and during the forfeiture period."[14] *Id.*

Another case that bolsters our conclusion that Moe's petition was a nullity from the moment it was filed is *Hill Construction v. Sunrise Beach, LLC*, 180 Md. App. 626, *cert. denied*, 406 Md. 192 (2008). There, we addressed whether a domestic corporation, Hill Construction, could rely on its timely filing of a lawsuit, when its charter was not forfeited, to maintain that suit after its charter was thereafter forfeited and then reinstated. Hill Construction had brought suit against Sunrise Beach, LLC, of which it was a member, and against other members of Sunrise Beach as a result of a dispute arising from Hill Construction's work in building four condominium units in Ocean City, Maryland, and the subsequent sale of those units. *Id.* at 628–29. Approximately a year after that suit was filed,

---

[13]When a corporation's charter is forfeited and the directors become trustees for purposes of liquidation, the "director-trustees may . . . [s]ue or be sued in their names as trustees or in the name of the corporation." C.A. § 3-515(c)(3).

[14]The Court of Appeals has since limited the scope of its holding in *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151 (2004), but only in the context of a condominium council of unit owners. *See Pines Point Marina v. Rehak*, 406 Md. 613, 637 (2008) (holding that, "if an incorporated council of unit owners forfeits its corporate charter, it becomes, by default, an unincorporated association with the power to sue and be sued under Real Property § 11-109").

Hill Construction's corporate charter was forfeited for nonpayment of personal property taxes. *Id.* That forfeiture led Sunrise Beach and the other members of the LLC to file a motion to dismiss, which was ultimately granted by the circuit court. *Id.* After Hill Construction noted an appeal, but before we issued an opinion in that matter, Hill Construction filed "articles of revival," reinstating its charter. *Id.* at 629–30.

On appeal, Hill Construction claimed that a corporation could maintain an action that was initiated when its charter was in good standing, even though its charter was subsequently forfeited during the pendency of the litigation. We found no merit to this claim. Citing C.A. § 3-503(d), which, as noted, addresses the prohibitive effects of corporate-charter forfeiture, we held that, "when the corporation's charter is forfeited," whether it be before the initiation of a lawsuit or during its maintenance of a lawsuit, the corporation "loses all powers and its actions are null and void."[15] *Id.* at 636. Two years later, we addressed this issue once again in *Tri-County Unlimited Inc. v. Kids First Swim School, Inc.*, 191 Md. App. 613, 621 *cert. denied*, 415 Md. 43 (2010), where, after noting that "[t]he fact that a corporation's right to sue is restored upon revival of its charter . . . is not enough to answer . . . whether a corporation can validate a lawsuit that it initiated when its charter was forfeited . . . by reviving its charter," we declared that "the answer is no."

___

[15]In *Hill Construction v. Sunrise Beach, LLC*, 180 Md. App. 626, 637, *cert. denied*, 406 Md. 192 (2008), we recognized that prior caselaw, as relied on in *Redwood Hotel v. Korbien*, 197 Md. 514, 521 (1951), which validated acts done while a corporation's charter was void, upon revival, was no longer good law. *Accord Tri-County Unlimited, Inc. v. Kids First Swim Sch., Inc.*, 191 Md. App. 613, 623 (2010).

In sum, *Dual*, *Hill Construction*, and *Tri-County Unlimited*, are helpful in determining whether Moe's can rely on the timely filing of its petition for judicial review when it continued to do business in this State, without the right to do so, during the 30-day period for filing a judicial review petition. Those cases lend significant support to the notion that neither a corporation nor, by implication, an LLC like Moe's may revive a suit that, though timely filed, was initiated by such an entity, after it had lost the right to do business in Maryland and yet persisted in doing business in this State. Indeed, it would defy logic and its more pedestrian partner, common sense, to conclude that a foreign LLC, whose right to do business in Maryland was forfeited but nonetheless continued to do business in this State, for a number of years, in violation of Maryland law, can revive its suit when a domestic LLC or corporation, under Maryland decisions, cannot. If, on the other hand, Moe's had revived its right to do business, before or during the thirty-day period for filing a petition for judicial review, and had subsequently filed that petition for judicial review, within that time period, then, as long as it could show that it fell within one of the three categories of " persons" who could file an action under L.U. § 4-401(a), Moe's would have been able to oppose the Board's decision in the circuit court.

We acknowledge, however, that the subtitle governing foreign LLCs provides that "maintaining suit" does "not constitute doing business in this State." C.A. § 4A-1009(a)(1). This provision, as Chipotle points out, does not contradict but is, in fact, consistent with the proscription found in C.A. § 4A-1007, preventing an LLC that does unauthorized business in

15

this State from maintaining suit. A foreign LLC that is not "doing business" in this State can still take certain actions in Maryland, such as holding meetings, maintaining bank accounts, and foreclosing mortgages, among other activities listed in C.A. § 4A-1009. But, a foreign LLC, like Moe's, that had its right to do business in Maryland forfeited but nonetheless continued to do business in this State, in violation of Maryland law, cannot maintain a suit in Maryland. And, if it files petition for judicial review during that time, that action is void *ab initio*.

## IV.

Finally, we shall briefly address Moe's contention that it is entitled to a remand because the circuit court did not consider whether it was "a person aggrieved" by the Board's decision to grant Chipotle's special exception.

There are three "persons" who may "file a request for judicial review of a decision of a board of appeals . . . by the circuit court of the county": "(1) a person aggrieved by the decision or action; (2) a taxpayer; or (3) an officer or unit of the local jurisdiction," L.U. § 4-401(a), when one of those "persons" seeks to file a petition for judicial review. But such a " person" must do so within 30 days of the Board's decision, as required by Rule 7-203(a). Consequently, even if Moe's were a "person aggrieved"under L.U. § 4-401(a)(1) and therefore had standing to petition the court for review as such, Moe's petition must nonetheless be dismissed because it did not meet Rule 7-203(a)'s 30-day deadline, as it had no right to

16

"maintain suit" under C.A. § 4A-1007(a) during the entire 30-day period and, when it re-attained that right, the thirty-day period had long since lapsed.

We note, moreover, that the circuit court, in effect, appeared to make a finding as to whether Moe's qualified as "a person aggrieved" when it opined, in its oral decision, that Moe's action against Chipotle was brought simply as a "matter of competition."  And this Court has explained, "a person is not 'aggrieved' for standing purposes when his sole interest in challenging a zoning decision is to stave off competition with his established business." *Superior Outdoor Signs, Inc.*, 150 Md. App. at 500.  *See also Byrniarski v. Montgomery Cnty. Bd. of Appeals*, 247 Md. 137, 145 (1967); *Kreatchman v. Ramburg*, 224 Md. 209, 220 (1961); *Aspen Hill Venture v. Montgomery Cnty. Council*, 265 Md. 303, 314 n.3 (1972); *Eastern Service Centers, Inc. v. Cloverland Farms Dairy Inc.*, 130 Md. App. 1, 8 (2000).

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED.  COSTS TO BE PAID BY APPELLANT.**